## JAMES KENNEALLY

### *v.*

## THE CITY OF CHICAGO *et al.*

*Opinion filed February 21, 1906—Rehearing denied April 11, 1906.*

1. OFFICES—*what allegation does not show a re-appointment.* An allegation in a petition for *mandamus* that the petitioner was appointed to the office of police patrolman in 1888 and drew his salary from that time until 1898, is not sufficient to show his biennial re-appointment. (*McNeill* v. *Chicago,* 212 Ill. 481, followed.)

2. SAME—*when officer does not hold over.* Under section 3 of article 6 of the City and Village act, providing that when the city council prescribes the duties and defines the powers of a city officer, together with the term of his office, "the term shall not exceed two years," an officer whose term is so fixed does not hold over until his successor is appointed.

3. SAME—*what is not evidence of legal existence of office.* The facts that the petitioner's name was carried upon the pay-rolls as a police patrolman, and that the civil service commissioners certified the pay-roll upon which his name appeared after the adoption of the Civil Service act, is no evidence of the legal existence of his office as police patrolman. (*Moon* v. *Mayor,* 214 Ill. 40, followed.)

4. CIVIL SERVICE—*by taking the civil service examination an officer waives rights under other acts.* A police patrolman who submits himself to an examination under the Civil Service act thereby becomes an applicant for office under the Civil Service act, and waives his right to rely upon the provisions of the City and Village act of 1872, or any other former act, as showing his right to hold the office.

5. SAME—*only persons in classified service can claim protection of provision against removal.* Only an officer or employee in the classified service who has been appointed under the rules after examination can claim the protection of section 12 of the Civil Service act, prohibiting removal from office except for cause, upon written charges and after an opportunity to be heard.

6. MANDAMUS—*mandamus may be denied upon the ground of laches.* Denial of a writ of *mandamus* to compel the restoration of the petitioner to the office of police patrolman is an authorized exercise by the trial court of its discretion, where the petitioner has permitted the duties for which he seeks compensation by the writ to be exercised for a period of six years by another person.

7. SAME—*discretion in awarding mandamus is not limited to Supreme Court.* The judicial discretion which may be exercised

where the granting of a writ of *mandamus* may create confusion and disarrange public service is not limited to the Supreme Court upon original applications to it for the writ.

8. SAME—*when date amended petition is filed is to be considered in determining laches.* If the original petition for *mandamus* to compel the restoration of the petitioner to the office of police patrolman shows that the petitioner was a *de facto* officer only, it fails to state a cause of action, and in considering the question of *laches* as applicable to the case the delay must be determined by the date of the filing of an amended petition attempting to show that petitioner was an officer *de jure.*

APPEAL, from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

This is a petition for *mandamus,* filed in the circuit court of Cook county by James Kenneally, the appellant, who claims to have been wrongfully omitted and excluded as a policeman from the pay-roll of the police department of the city of Chicago since March 14, 1898, against the appellees, the city of Chicago, the mayor of said city, the superintendent of police, and the civil service commissioners of said city, commanding the city of Chicago, the mayor, and the superintendent of police to forthwith place the name of appellant, the petitioner, upon the roster of police patrolmen, and upon the pay-roll of police patrolmen of said city, to the end that the petitioner may thereafter perform without hindrance the functions of the office of, and draw the pay due him as a, police patrolman of said city from time to time, as other police patrolmen are paid; and also commanding said civil service commissioners of the city to certify the name of petitioner as a person, entitled to pay as a police patrolman of said city, whenever his name shall hereafter appear as such police patrolman upon any pay-roll of police patrolmen, presented to said commissioners for their certification, to the end that he may thereafter draw the salary due him as a police patrolman of said city, as other police patrolmen

are paid. A special demurrer was filed to the amended petition. This demurrer was sustained, and the petition dismissed at the petitioner's costs, to which ruling of the court petitioner entered his exceptions. An appeal was taken to the Appellate Court, which has affirmed the judgment of the circuit court, sustaining the demurrer to the petition and dismissing the same. The present appeal is prosecuted from such judgment of affirmance, entered by the Appellate Court.

The original petition was filed on January 24, 1900, and the amended petition, to which the demurrer was sustained, and which was dismissed, was filed on December 19, 1904. The amended petition alleges that on April 23, 1875, Chicago adopted the City and Village act of 1872, and is still organized under said act with the powers provided thereby, and by the amendments thereto; that, by section 1 of article 5 of said act, it was provided that: "The city council in cities, and the president and board of trustees in villages, shall have the following powers: * * * *Sixty-sixth*—To regulate the police of the city or village, and pass and enforce all necessary police ordinances. * * * *Sixty-eighth*—To prescribe the duties and powers of a superintendent of police, policemen and watchmen;" that, on April 18, 1881, the city council passed an ordinance, wherein, in article 1 of chapter 8 thereof, it was provided that a department, known as the department of police, be established, embracing the superintendent of police, a secretary to him, a captain of police for each police district, and such number of lieutenants, detectives, sergeants, and police patrolmen, as has been or may be prescribed by ordinance, and whereby there was created the office of superintendent of police, who should be the head of said department, to hold his office for two years, and until his successor should be appointed and qualified; and wherein it was provided that the superintendent of police should be appointed on the first Monday in May, 1881, or as soon thereafter as might be, and biennially thereafter; and wherein it was also provided that the suprintend-

ent should have the management and control of all matters relating to the department, the officers, and members, and, with the consent of the mayor, should appoint all officers and members of said department, provided, etc.; that the provisions of said ordinance continued in force until the adoption on July 1, 1895, of the act to regulate the civil service of cities, which act was declared by proclamation of the mayor to be thereafter in full force and effect in Chicago; that John A. Roach was elected mayor in April, 1887, and acted as such for two years thereafter; that on March 19, 1888, one George Hubbard was appointed by the mayor, by and with the advice and consent of the council, superintendent of police and was performing the duties of that office on March 19, 1888; that on March 19, 1888, the city council, by ordinance theretofore duly passed and then in force, authorized the appointment of a large number of police patrolmen, to-wit: twenty-five hundred for service on the police force; that on March 19, 1888, the petitioner, appellant herein, was a citizen of the United States and qualified elector of said city, etc.; that, on March 19, 1888, appellant was duly appointed by the then superintendent of police, with the consent of the mayor, to the office of police patrolman in said department of police, as one of the number of police patrolmen authorized to be appointed under said ordinance, and thereupon took the oath of office, filed his bond, and became a police patrolman of said city, and served continuously as such from March 19, 1888, until March 14, 1898, "and hath remained such police patrolman of the said city of Chicago, from thence hitherto;" that between March 19, 1888, and March 14, 1898, appellant was recognized as a police patrolman by the respective mayors and superintendents of police of the city, and by the city council; that no successor to him as such police patrolman was at any time during said period appointed; that the city council during said time duly appropriated money to pay the salary, accruing to appellant as such police patrolman, which salary was

paid to him from time to time by the proper officers of the city; that, upon the adoption by the city of the Civil Service act dated July 1, 1895, all laws or parts of laws, and all ordinances and regulations of the city inconsistent therewith were repealed by virtue of section 37 of the act; that, by section 3 of the Civil Service act, it was provided that "said commissioners shall classify all the offices and places of employment in such city with reference to the examinations hereinafter provided for, except those offices and places mentioned in section 11 of this act. The offices and places so classified by the commission shall constitute the classified civil service of such city; and no appointments to any of such offices or places shall be made except under and according to the rules hereinafter mentioned;" that, by section 4 of said act, it was provided as follows: "Said commission shall make rules to carry out the purposes of this act, and for examinations, appointments and removals in accordance with its provisions, and the commission may, from time to time, make changes in the original rules." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 827); that by rule 1 of the rules, adopted by the civil service commission, it was provided that the offices and places, named in section 11 of the act, should constitute the unclassified service, which section 11 is as follows: "Officers, who are elected by the people, or who are elected by the city council pursuant to the city charter, or whose appointment is subject to confirmation by the city council, judges and clerks of election, members of any board of education, the superintendent and teachers of schools, heads of any principal department of the city, members of the law department, and one private secretary of the mayor, shall not be included in such classified service;" (Ibid. p. 829;) that, by the terms of rule 2, "all other offices and places of employment in said city, under the provision of said act, whether permanent, temporary or substitute, shall constitute the classified service. * * * For convenience in designation, in carrying on examinations, certifying for

appointments and promotions, and in making removals, the official service shall be divided into divisions, based upon the character of the service to be performed, and each division shall be divided into grades, based upon the amount of compensation. The several divisions of the official service shall be as follows: * * * Division D.—Police Service.—All positions in the uniformed police force;" that the civil service commissioners proceeded to classify the various offices and places of employment of the city, and that such classification was made under and by virtue of said act, and the rules so adopted; that all police patrolmen in the city, including appellant, were, at the time of the adoption of said rule 1 and at the time of said classification, in the uniformed police force of said city, and, by virtue of said act and rule and classification, became and were classified in Division D of the official service under said Civil Service act, and thereupon the offices and places of employment, so classified by said commission, did "constitute the classified civil service of said city of Chicago;" that, by virtue of the classification of the office of said police patrolmen of said city, then and there held by them, the then incumbents of said office, including petitioner, then and there became police patrolmen *de jure* in the classified civil service of said city, and petitioner so continued from thence hitherto.

The petition then sets forth sections 31 and 32 of the Civil Service act in relation to the payment of salaries by the comptroller and paymaster, etc., after certification. (Ibid. p. 832.) The petition further alleges that the first board of civil service commissioners, appointed by George B. Swift, the then mayor, at the request of the chief executive officers of the city and the comptroller thereof, in the year 1895, adopted the practice of passing upon and certifying all pay-rolls of the employees and officers of the city, including the pay-rolls of all police patrolmen in the employ of the city, which practice has continued from thence hitherto; that it was then and ever since has been required by the

comptroller and board of civil service commissioners, that all pay-rolls in the city under the Civil Service act, including the pay-roll of the police patrolmen of said city, should be so certified as a condition of payment therefor; that by said certification it was declared by said board that every person, whose name was on the pay-roll so certified, was entitled to be paid as a person occupying an office or place of employment under and according to the provisions of said Civil Service act, and entitled to payment therefor, as being in the classified service of said city; that, at the time of such classification, which was published and distributed by said commission to the public, beginning August 14, 1895, and going into effect August 26, 1895, appellant was a police patrolman and included in the uniformed police force of the city, having been duly appointed by the superintendent of police of said city with the consent of the mayor, and, thereafter having qualified, and acted as such police patrolman, thereupon became, by virtue of said office then and there held by him, a member of the classified civil service of said city, as an officer *de jure,* and thereafter so continued, from thence hitherto; that he has never been legally dismissed, discharged, or separated from the office of police patrolman in the classified service of said city, or deprived of his said office by due process of law; that on to-wit, December 18, 1897, by direction of the then superintendent of police, appellant took what was then and is called the civil service examination as to his qualifications for the office of a first-class police patrolman, which was conducted under the direction of the civil service commissioners, and was passed as duly qualified to hold the office of police patrolman; that for more than two years next prior to March 14, 1898, he was a police patrolman, and continuously performed the duties of such police patrolman, and was duly carried on the pay-rolls of the city, and from month to month was duly certified by the commission as a police patrolman, entitled to pay as such under the Civil Service act; that, after he had

taken his examination on December 18, 1897, and passed the same, he continued to be certified by the commissioners on the pay-rolls of said city as a member of the classified civil service of said city, and to be paid by the city as an officer or employee thereof; that in April, 1897, Carter H. Harrison was elected mayor and qualified, and by election from term to term continued to be mayor; that, on the first Monday of May, 1897, Joseph Kipley was appointed by the said mayor superintendent of police, by and with the advice and consent of the city council, and entered upon the discharge of the duties of such office, and continued to be such superintendent until after the month of January, 1900; that on March 14, 1898, Kipley, as such superintendent of police, illegally and without warrant of law, directed the name of petitioner to be dropped from the pay-roll of the police patrolmen, which was done; that such action was taken without any charges having ever been preferred against petitioner, and without any trial of any charges of any nature against him, nor because of any alleged misconduct on his part; that said Kipley, as such superintendent, during his term of office, caused the name of petitioner to be omitted and excluded from the pay-roll of the police department, and his successor continues to do so; that such conduct of Kipley, and his successor, in causing petitioner's name to be omitted and excluded from said pay-roll is a wrongful denying to petitioner of his legal right as a police patrolman of said city to the emoluments of his office, and was without due process of law; that, in consequence thereof, petitioner has not been paid any portion of his salary as such police patrolman from March 14, 1898, until the present time; that he has made demand upon the mayor, and upon the superintendent of police, that his name should be reinstated on said pay-roll, but said demand has been refused; that no part of the salary, accruing to petitioner from March 14, 1898, to the present time, has ever been paid to him, notwithstanding said demand; that, under the provisions of the laws and

ordinances of said city, said salary was the sum of $83.33 per month, less one per cent to be deducted by the police pension board, and paid into the police pension fund; that from the time of appellant's appointment on March 19, 1888, as police patrolman until March 14, 1898, there was deducted from his salary and put into said fund the sum of one per cent from each monthly payment of salary, and petitioner is entitled to share in the benefits of said fund; that the act of Kipley, as superintendent of police, directing petitioner's name to be dropped from the pay-rolls and causing the same to be omitted therefrom, thereby denying petitioner his legal rights, is wholly unauthorized and without due process of law; that such action of Kipley, and the other defendants, has had the effect to deprive petitioner of his right to exercise the functions and duties of a police patrolman as a member of the classified civil service, and receive and enjoy the salary pertaining to the office, and defendants thereby deny petitioner the equal protection of the laws; that the city, the mayor, and the superintendent of police are estopped by law and by the facts hereinbefore stated, to now deny that petitioner was on March 14, 1898, and from thence hitherto has been, and still is, a police patrolman in the classified service under the Civil Service act; "and that as such he was, and is, entitled as such police patrolman, to all the benefits and protection afforded by said Civil Service act, and particularly to the benefits and protection of the provisions of said act, governing the removal or discharge from said service of employees of said city in the classified civil service thereof;" that, since the filing of appellant's petition herein on January 24, 1900, Kipley was succeeded in the office of superintendent of police by one Francis O'Neil, who is now the duly appointed and acting superintendent of police of said city; that, since the filing of said petition on January 24, 1900, the civil service commission has been changed, and it now consists of Joseph Powell, Christian Meier, and Joseph W. Errant; that the annual appropria-

tion made by the common council, to-wit, in the month of December, 18...., and also in the month of December for each and every year thereafter up to and including the year 1895, for the payment of employees of said city, and for other municipal purposes, included appropriations for the payment of police patrolmen, among whom they included petitioner as a member thereof; and in the month of December, 1896, there was an appropriation made for the police patrolmen then upon the police pay-rolls of said city for 1897, and so in the classified civil service as aforesaid, including among the number of such police patrolmen the petitioner; that in and after the month of December, 1897, and each and every year thereafter up to the present time there were further appropriations made by said city for the payment of police patrolmen in the classified civil service for the ensuing years respectively, and petitioner was entitled thereunder to be taken and carried upon said pay-rolls for said several years so as to include the present time, as having been lawfully in the employment of said city in the classified civil service thereof.

W. P. BLACK, and A. B. CHILCOAT, (C. D. F. SMITH, of counsel,) for appellant.

JOHN W. BECKWITH, (JAMES HAMILTON LEWIS, Corporation Counsel, of counsel,) for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Many of the points, made by counsel for appellant in this case, are the same as those, which were made and passed upon by this court in the cases of *Stott* v. *City of Chicago,* 205 Ill. 281, *McNeill* v. *City of Chicago,* 212 id. 481, and *Moon* v. *Mayor,* 214 id. 40.

*First*—Appellant claims that he was appointed a police patrolman on the 19th day of March, 1888, and continued

to act as such police patrolman from March 19, 1888, up to March 14, 1898, when, as he alleges, he was dropped from the pay-rolls by the superintendent of police. Appellant's appointment on March 19, 1888, must have been, and was, under the provisions of the City and Village act of 1872, because at that time the Civil Service act had not been passed or adopted. Section 3 of article 6 of the City and Village act provides that "all officers of any city, except where herein otherwise provided, shall be appointed by the mayor (and vacancies in all offices except the mayor and aldermen shall be filled by like appointment) by and with the advice and consent of the city council. The city council may, by ordinance not inconsistent with the provisions of this act, prescribe the duties and define the powers of all such officers, together with the term of such office: *Provided,* the term shall not exceed two years." (1 Starr & Curt. Ann. Stat.—2d ed.—p. 722). Under this section of the statute, the term of office of the appellant as police patrolman could not have exceeded the term of two years. There is no allegation in his petition that during the ten years, lacking five days, which elapsed between the time of his appointment and March 14, 1898, he was re-appointed at the end of each term of two years during that period. Upon this subject we said in *McNeill* v. *City of Chicago, supra* (p. 488): "How can it be said, then, that an allegation that appellant was appointed to an office in 1887, and that he qualified then and took upon himself the duties of that office, and has ever since held the office, can be held, without any other allegation, or any proof other than that he was appointed in 1887 and drew his salary from that time until 1898, sufficient to show his re-appointment biennially, from 1887 to the time he claims he was illegally removed from office or dropped from the pay-roll? * * * In order to hold that appellant was in 1898, and still is, according to the allegations of his petition, a police·patrolman, we must hold his allegation, that he was duly appointed in 1887, equivalent to the allegation that, either

before or after 1881, when the police department was created, an ordinance was passed authorizing the appointment of some number of police patrolmen, and that petitioner was within that number, and was appointed, and that he qualified and was re-appointed biennially thereafter to the same office, and that, in each instance, he qualified and took upon himself the duties of the office. * * * Without any proof other than that the petitioner was appointed in 1887 and served thence to 1898, and drew his pay, which is all the proof in the record as to his *de jure* right to any office, we think the contention of appellant that the court should assume all the things that have been pointed out, that are neither alleged nor proved, but that are necessary to establish his *de jure* right, is more than the mere averment, that he was duly appointed in 1887 and since then drew his pay, will warrant us in doing." This language is precisely applicable to the petition in the case at bar. The petitioner here alleges that appellant was appointed in 1888 and drew his salary from that time until 1898. This is not sufficient to show his re-appointment biennially from 1888 to the time he claims he was illegally removed from office or dropped from the pay-roll. In other words, the contention of the appellant, that he was appointed a police patrolman in 1888 and drew his salary from that time until 1898, and for that reason is to be regarded as having been improperly dropped from the police pay-roll in March, 1898, is disposed of by what was said by this court in *McNeill* v. *City of Chicago, supra.*

*Second*—It is said, however, by the appellant, that having been appointed police patrolman on March 19, 1888, appellant continued to hold over after the expiration of his term of two years until his successor should be appointed, and, as no successor was appointed during the period between March 19, 1888, and March 14, 1898, he continued to hold over during all the periods respectively, each of two years, during that time. It has been held, under certain cir-

cumstances, that officers are entitled to hold over until their successors are elected or appointed and have qualified, but this is not so, where the legislative intent to the contrary is manifested, and where restrictive words are used expressly or impliedly prohibiting such holding over. (Dillon on Mun. Corp.—3d ed.—sec. 217; 23 Am. & Eng. Ency. of Law,—2d ed.—p. 412). "Where it is provided that officers shall be elected 'for one year only,' they cannot hold over beyond the end of the year." (23 Am. & Eng. Ency. of Law,—2d ed.—p. 413, and cases in note). That is to say, where the statute used the restrictive words, "for one year only," the holding over until the election of a successor could not take place. In the case at bar, the language of the statute is, as above quoted, "the term shall not exceed two years." We see no reason why these words do not have as much restrictive force as the words, "for one year only." Section 3 of article 6 of the City and Village act expressly provides that, where the city council prescribes the duties and defines the powers of a city officer, together with the term of the office, the term shall not exceed two years. This negatives the idea of the right of the officer to hold over until the appointment of his successor.

*Third*—The mere fact, that appellant's name was carried upon the pay-rolls, or that the civil service commissioners certified the pay-roll, upon which his name appeared after the adoption of the Civil Service act, is no evidence of the legal existence of his office as police patrolman. In *Moon* v. *Mayor, supra,* we said (p. 44) : "The petition alleges that the mayor of the city sent to the city council the name of the petitioner as an appointee to the position of police patrolman, and that the city council approved the appointment, and that he has since, until, as he alleges, unlawfully removed, performed the duties of the office and received the compensation. Neither appointment by the mayor, nor confirmation by the council, or both, can operate to create an office. Nor can an office be legally established by the appro-

220—32

priation of the public money, by ordinance, to the payment of the salary or compensation of the person acting as an officer." In the petition in *McNeill* v. *City of Chicago, supra,* as in the petition in the case at bar, it was and is stated as follows (p. 490) : "The first board of civil service commissioners in 1895, at the request of the chief executive officers of the said city of Chicago and the comptroller of said city, adopted the practice of passing upon and certifying all payrolls of the employees of said city of Chicago, including the pay-rolls of all police patrolmen in the employ of said city, which practice has continued from thence hitherto." In regard to this allegation we said in *McNeill* v. *City of Chicago, supra:* "Surely, under such allegation as that, even if admitted, which it is not, by the answer, the court would not have been authorized to conclude that such certification of the pay-roll was an evidence that appellant was within the civil service."

*Fourth*—Moreover, the allegation of the amended petition, relating to the creation of the office of police patrolman and the appointment of petitioner thereto, is a mere conclusion of the pleader, that the city had authorized the appointment of a large number of policemen by ordinance for service on the police force in the police department of the city, and that he was duly appointed by the superintendent of police and the mayor to the office of police patrolman in said city, as one of the number of police patrolmen, then and there authorized to be appointed under said ordinance. The insufficiency of the allegation, that appellant was "duly appointed," is sufficiently shown in the case of *Stott* v. *City of Chicago, supra,* and need not be here repeated. Upon this branch of the case we agree with the following views, expressed in the opinion of the Appellate Court deciding this case : "The allegations of the petition are not, in our opinion sufficient to show that the office, which appellant claims to hold, had, at the time the petition was filed, a legal existence under the decision in *Moon* v. *Mayor,* 214 Ill. 40.

Again, there is in the petition no averment that petitioner was ever re-appointed. If the petition could be held to show that the office of police patrolman had a legal existence, the statute provides that the term of an office, created by ordinance, shall not exceed two years, and appellant was at most, under the averments of the amended petition, at the time of his discharge, a *de facto,* and not a *de. jure* officer, and, therefore, not entitled to the extraordinary writ of *mandamus* to restore his name to the pay-roll.—*McNeill* v. *City of Chicago, supra,* p. 487."

*Fifth*—But, aside from the views above expressed, appellant is estopped from relying upon any of the provisions of the City and Village act of 1872 in regard to his appointment to the office of police patrolman, or to his continuance in that office. The allegations of his petition show that he relies for the relief asked upon the provisions of the Civil Service act of 1895, and that the requirements of that act have not been met or complied with. In other words, the petition shows that he has not so brought himself within the requirements of the Civil Service act, as to be justified in invoking its provisions in his own favor.

In his petition appellant alleges "that on, to-wit, the 18th day of December, 1897, by the direction of the then superintendent of police of said city of Chicago, Joseph Kipley, your petitioner took what was and is called the civil service examination as to his qualifications for the office of a first-class police patrolman of said city of Chicago, which examination was conducted by and under the direction of the civil service commissioners of said city of Chicago; that, upon said examination, your petitioner was passed as duly qualified to hold and exercise the office of police patrolman of said city of Chicago; * * * and that, after your petitioner had taken successfully his examination as a first-class patrolman on December 18, 1897, and had passed the same, as hereinbefore stated, he continued to be certified by said civil service commissioners on the pay-rolls of said city as a

member of the classified civil service of said city, and to be
paid by said city as an officer or employee of said city of
Chicago for such service under said Civil Service act." Al-
though appellant alleges that he was directed by the super-
intendent of police to take what is called the civil service
examination, he was not obliged to submit himself to such
examination unless he chose. Section 6 of the Civil Service
act says, that "all applicants for offices or places in said
classified service, except those mentioned in section 11, shall
be subjected to examination," etc. By submitting to the
examination appellant made himself an applicant for the
office of police patrolman under the Civil Service act. He
thereby waived his right to rely upon the provisions of the
act of 1872, or any former act. He avers that, upon his
examination, he was passed, as duly qualified to hold and
exercise the office of police patrolman. That is to say, he
was placed upon the register. Section 8 of the Civil Service
act provides as follows: "From the returns or reports of the
examiners, or from the examinations made by the commis-
sion, the commission shall prepare a register for each grade
or class of positions in the classified service of such city of
the persons, whose general average standing upon exami-
nation for such grade or class is not less than the minimum,
fixed by the rules of such commission, and who are other-
wise eligible, and such persons shall take rank upon the reg-
ister as candidates in the order of their relative excellence
as determined by examination, without reference to priority
of time of examination." (1 Starr & Curt. Ann. Stat.—
2d ed.—p. 828). Appellant having, as he alleges, been found
to be duly qualified, was upon the register mentioned in sec-
tion 8. He was an "eligible," and took rank upon the regis-
ter as a candidate for the position of police patrolman. What
was the next step to be taken by him? Section 10 of the Civil
Service act provides as follows: "The head of the depart-
ment or office, in which a position, classified under this act,
is to be filled, shall notify said commission of that fact, and

said commission shall certify to the appointing officer the name and address of the candidate, standing highest upon the register for the class or grade, to which said position belongs, except," etc. The exception has no application here. Said section also provides that "said commission may strike off names of candidates from the register after they have remained thereon more than two years." It also provides that "the appointing officer shall notify said commission of each position to be filled separately, and shall fill such place by the appointment of the person, certified to him by said commission therefor, which appointment shall be on probation for a period to be fixed by said rules." There is no allegation in the petition here, that any vacancy occurred after the examination of the petitioner, or that, after his examination, he was certified or appointed in accordance with the provisions of section 10. So far as his petition shows, he was never certified to the superintendent of police, or other appointing officer in that department, in the manner required by section 10. On the contrary, his petition shows that he was not appointed, but was removed after examination and before certification.

Appellant alleges in his petition that "he was and is entitled, as such police patrolman, to all the benefits and protection, afforded by said Civil Service act, and particularly to the benefits and protection of the provisions of said act, governing the removal or discharge from said service of employees of said city in the classified civil service thereof." Section 12 of the Civil Service act provides that "no officer or employee in the classified civil service of any city, who shall have been appointed under said rules and after said examination, shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense." (1 Starr & Curt. Ann. Stat.— 2d ed.—p. 829). Appellant does not allege in his petition that he was appointed as an officer in the classified civil service after his examination. Only an officer or employee in

the classified civil service, who has been appointed under the rules and after examination, is entitled to invoke the provision, that he cannot be removed or discharged except for cause upon written charges, and after an opportunity to be heard in his own defense. As appellant was never certified to the appointing officer of his department in accordance with section 10, and was never appointed after his examination, he is not in a position to claim the benefit of written charges, and an opportunity to be heard under the Civil Service act. In this respect his petition was defective. In *Stott* v. *City of Chicago, supra,* in commenting upon this section 12, we said (p. 294) : "In his petition he fails to allege that the civil service commission had classified the office, or had made rules to carry out the purposes of the act and for examinations, appointments and removals, as required by section 4 of the act, and wholly fails to show by his petition that he was in the classified service, or that he had been appointed under any rules relative to that service 'after an examination,' but, on the contrary, he shows that he was not appointed after an examination, but was removed after the examination and before the certification. We regard the petition in this case so lacking in substance that it was obnoxious to general demurrer." The same may be said of the amended petition in the case at bar. In *McNeill* v. *City of Chicago, supra,* we said (p. 491) : "By the express language of section 12 of the act to regulate the civil service of cities, it is only applicable to those officers, who 'shall have been appointed under said rules and after said examination.' By his own showing appellant had not been appointed after his examination, but appointment was refused him, and the court did not err in refusing to give the holdings asked, upon the theory that appellant was protected by the Civil Service act."

*Sixth*—In addition to what has been said, it is clear that the appellant has been guilty of *laches* in not sooner presenting his application for restoration to the position, which he

claims. "The granting of the writ of *mandamus* is discretionary with the court in view of all the existing facts, and with due regard to the consequences which may result." (*People* v. *Ketchum,* 72 Ill. 212; *People* v. *Board of Supervisors of Adams County,* 185 id. 288). In *People ex rel.* v. *Board of Supervisors,* 185 Ill. 288, we said (p. 293): "Courts, in granting or refusing writs of *mandamus,* exercise judicial discretion, and are governed by what seems necessary and proper to be done in the particular instance for the attainment of justice. Courts, in the exercise of wise, judicial discretion, may, in view of the consequences attendant upon the issuing of a writ of *mandamus,* refuse the writ, though the petitioner has a clear legal right for which *mandamus* is an appropriate remedy." It has been said that "the writ is not granted as a matter of absolute right, and where it can be seen that it cannot accomplish any good purpose, or that it will fail to have a beneficial effect, it will be denied." (*Cristman* v. *Peck,* 90 Ill. 150; *People* v. *Lieb,* 85 id. 484; *Illinois Watch Case Co.* v. *Pearson,* 140 id. 423). It has also been held that the writ of *mandamus,* being a discretionary writ, will only issue in a case where it appears by law that it ought to issue, and the court will not order it in doubtful cases. (*Commissioners of Highways* v. *People,* 4 Ill. App. 391). In *People ex rel.* v. *Davis,* 93 Ill. 133, we said: "The court exercises a discretion in granting or refusing the writ, and, if the right be doubtful, it will be refused." It has been held that the writ will be refused where the granting of it will disarrange the public service. (*People ex rel.* v. *Palmer,* 38 N. Y. Supp. 652). In *People ex rel.* v. *Collis,* 39 N. Y. Supp. 698, it was said: "Without considering or determining the other questions raised upon this appeal, it seems to us the order appealed from should not have been made by reason of the delay and *laches* on the part of the relator in demanding reinstatement in the office, from which he had been discharged, and in applying for a *mandamus* to compel such reinstatement. * * *

It is manifestly unfair, where there is disagreement as to the propriety or legality of the discharge, that the relator should lie still, and allow another person to occupy the position from which he has been removed, and draw pay for his services therein, and, after more than four months has elapsed, that he should be allowed to have this remedy by *mandamus* to be reinstated in office, and recover compensation for services therein, which he has not performed, and which he has for a long time, without objection, permitted another person to perform, and be paid for." This language is precisely applicable to the case at bar. Appellant, according to the allegations of his petition, was dropped from the pay-rolls on March 14, 1898. This amended petition was filed upon December 19, 1904. He asks to be reinstated, and to be allowed compensation for all the time from March 14, 1898, to December 19, 1904, a period of more than six years, when it is apparent that the duties of his office during this period must have been discharged by some other person than the appellant. In other words, he has permitted the duties, for which he now asks compensation, to be performed for more than six years by some other person than himself. To avoid such consequences the court has a discretion to refuse the writ of *mandamus.*

*Seventh*—Counsel for appellant say that the rule, which allows the court a discretion of the kind here stated in the matter of granting the writ of *mandamus,* only applies to cases where an original application is made for the writ to this court, and not where the application is made to the circuit court. We do not find that any such distinction is made in the cases, which hold the doctrine. In *People* v. *City of Rock Island,* 215 Ill. 488, where it was held that the granting of a writ of *mandamus* is discretionary with the court in view of all the existing facts, and with due regard to the consequences which will result, there was an appeal from the judgment of the circuit court of Rock Island county, denying a petition for a writ of *mandamus;* that is to say, in

that case the rule was held to apply where the writ was issued by a circuit court, and not by this court. Again, in *People v. Olsen,* 215 Ill. 620, where a petition for *mandamus* had been filed in the circuit court, and brought by appeal to this court, it was said (p. 622) : "The writ of *mandamus* is not a writ of right, and it was largely within the sound discretion of the trial court to refuse to issue it. When a writ of *mandamus* is asked the court may inquire whether it will operate impartially, create confusion and disorder, and whether it will or will not promote substantial justice. Courts, in the exercise of the discretion with which they are vested, may, in view of the consequences attendant on the issuing of a writ of *mandamus,* refuse the writ, though the petitioner has a clear legal right for which *mandamus* is a proper remedy. * * * The court may act on existing facts and view the case with reference to the consequences of its action, * * * and may consider whether the petition has been presented to settle mere abstract rights, unaccompanied by practical or substantial benefits.—*North* v. *Trustees of University of Illinois,* 137 Ill. 296." (See also *Cristman* v. *Peck,* 90 Ill. 150).

*Eighth*—In their original argument in this case, counsel for appellee claim that the proceeding by *mandamus* is an action at law, and that the action is barred by the Statute of Limitations like any other action at law. The original petition in this case was filed on January 24, 1900. The name of appellant was dropped from the police pay-rolls upon March 14, 1898. Not quite two years elapsed after appellant's discharge before the filing of the original petition on January 24, 1900. It is, therefore, contended by the appellant that, inasmuch as five years had not elapsed, but only a period of a little less than two years, the doctrine of *laches* cannot be applied to this case. The theory of this contention is that, if the doctrine of *laches* is applied, it must follow the period fixed by the Statute of Limitations, and that the Statute of Limitations applicable to such cases is said by

counsel for appellant to be the five years' statute of limitations. In support of this position, the latter clause of section 15 of the Limitation act is invoked, which reads as follows: "And all civil actions not otherwise provided for shall be commenced within five years next after the cause of action accrued." (2 Starr & Curt. Ann. Stat.—2d ed.— p. 2625).

Without passing any opinion upon the correctness of the contention of counsel upon this subject, it may be admitted, for the purposes of this case, that a delay of five years must have occurred in order to substantiate the charge of *laches* against the appellant. The amended petition was not filed until December 19, 1904. More than five years had elapsed after the discharge of appellant on March 14, 1898, before the amended petition was filed. That the date of filing the amended petition is the proper date to be considered in determining the extent of the delay will appear from the following considerations:

Where an amended declaration or petition sets up a new cause of action, the Statute of Limitations will apply, even though it would not apply to the cause of action, set up in the original declaration or petition. It is conceded by counsel for appellant that the original petition, filed in this case on January 24, 1900, was similar to the original petitions, filed in the cases of *Stott* v. *City of Chicago, supra,* and *McNeill* v. *City of Chicago, supra.* In *McNeill* v. *City of Chicago, supra,* we said (p. 489): "The most that the evidence tends to show is, that he was a *de facto* officer until he was dropped from the pay-roll, and if he was not a *de jure* officer, although a *de facto* officer, it is entirely plain to us that he is not entitled to the extraordinary writ of *mandamus* to compel the restoration of his name to the pay-roll. If appellant was but a *de facto* officer, he was holding his position, drawing his pay, and exercising the functions of his office at the mere will of the city, and could be deprived of it, at any moment the city might elect, by being refused his pay, or a

demand being made·upon him to cease the performance of official duties." By the language of the allegations in the original petition, filed January 24, 1900, it appeared that the present appellant was a mere *de facto* officer, and not a *de jure* officer, and, therefore, was not entitled to the extraordinary writ of *mandamus* to compel the restoration of his name to the pay-roll. This being so, the original petition for *mandamus,* filed on January 24, 1900, did not state any cause of action. If it be admitted that the amended petition, filed on December 19, 1904, showed· the appellant to be a *de jure* and not a *de facto* officer, so as to state a good cause of action, it is another and different cause of action from that stated in the original petition. In *Mackey* v. *Northern Milling Co.* 210 Ill. 115, it was said (p. 120) : "The amended count does, however, set up a cause of action, but, inasmuch as the original declaration stated no cause of action, it seems to follow that the amended declaration stated a new cause of action,—one which had never been stated before,—and hence the Statute of Limitations was a good defense. There could be no re-statement of a cause of action by the amended declaration, unless the cause of action had been stated before." So, in the case at bar, as the original petition stated no cause of action, showing appellant to be merely an officer *de facto,* the amended petition, filed on December 19, 1904, if it stated a good cause of action, stated a new cause of action. (*Eylenfeldt* v. *Illinois Steel Co.* 165 Ill. 185). It follows that, if this proceeding by *mandamus* were to be treated as an action at law, the Statute of Limitations, which would apply to the amended petition here under consideration, would be, according to the contention of appellant's counsel, the five years' statute. Consequently, in considering the question of *laches* as applicable to this case, the length of the delay must be determined by the date of the filing of the amended petition.

Inasmuch, therefore, as appellant has waited more than five years before filing a petition for *mandamus,* which sets

up a good cause of action, and inasmuch as the granting of the writ at this late day would create confusion and disorder and grave public inconvenience, and might result in disarranging the public service, and inasmuch, as in this class of cases, the issuance of the writ is a matter of discretion with the court, acting upon existing facts, and viewing the whole case with due regard to the consequences of its action, we are of the opinion that the appellant has been guilty of such *laches,* as authorized the circuit court to refuse to grant the writ.

Accordingly, the judgment of the Appellate Court, affirming the judgment of the circuit court, is affirmed.

*Judgment affirmed.*