**James F. Carson, Appellee, v. City of Chicago, Appellant.**

**Gen. No. 19,913.**

1. MANDAMUS, § 126*—*character of pleadings.* When the artificial course of pleading in mandamus suits is followed the petitioner files pleas to defendant's answer, the defendant may reply to the

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

pleas, and a rejoinder to the replication is a pleading of the petitioner or plaintiff.

2. Mandamus, § 6*—*necessity of showing clear right.* A writ of mandamus will not be awarded in a doubtful case, but only where the right of the relator or petitioner is clear and undeniable.

3. Civil service, § 27*—*when mandamus will not be awarded.* A writ of mandamus will not be awarded to compel a city to appoint petitioner to a civil service position where it would disarrange the public service.

4. Civil service, § 27*—*when awarding mandamus to compel appointment to position erroneous.* The awarding of a writ of mandamus to compel a city to appoint petitioner to a civil service position of superintendent of horses, *held* erroneous for the reason that the right of the petitioner was not clear and undeniable and the granting of the writ would disarrange the public service, the facts showing that petitioner had been appointed as assistant superintendent of horses and was laid off and that he claimed the right to appointment as superintendent as being the next on the eligible list to fill a vacancy in the office of superintendent under a rule of the civil service commission, providing that officers laid off shall be reinstated according to seniority in the positions formerly held by them or to positions of the same character in the same grade, and it appearing that under such rule the office of superintendent was not a position formerly held by him or of the same grade, and it also appearing that under another rule he had exhausted his rights by having accepted the position of assistant superintendent.

Appeal from the Circuit Court of Cook county; the Hon. John McNutt, Judge, presiding. Heard in this court at the October term, 1913. Reversed and remanded. Opinion filed October 13, 1914.

William H. Sexton, for appellant; Joseph F. Grossman and John E. Foster, of counsel.

A. D. Gash, for appellee.

Mr. Presiding Justice Brown delivered the opinion of the court.

This is an appeal from an order of the Circuit Court of Cook county entered July 19, 1913, awarding a mandamus to the appellee, Carson, directing the appellant, the City of Chicago, "forthwith to appoint said Carson to the position or employment of superintend-

ent of horses of the City of Chicago made vacant by the death of Adam. S. Barber on or about December 11, 1911, to the end that he may at once enter upon the performance of his duties as superintendent of horses and continue in the performance thereof and receive salary therefor subject to the laws, rules and ordinances pertaining to said position or employment. of superintendent of horses of the department of police of the City of Chicago."

The pleadings in the case are somewhat elaborate and confused and they repeat the irregularities found in much of the pleading in mandamus suits in Illinois, where the proper special pleading to this common-law action of mandamus seems to be widely ignored.

We shall not therefore further describe them, but merely state the facts which the final demurrer in the case admitted. It was a demurrer to a pleading called the defendant's rejoinder, although when the artificial course of pleading in mandamus suits is followed the. petitioner files pleas to the defendant's answer, the defendant may *reply* to those pleas, and a rejoinder to such replication is a pleading of the petitioner or plaintiff.

The demurrer in question was sustained by the court, and the defendant standing by its "rejoinder," the mandamus was ordered.

The facts admitted, as we understand them, are that Carson, with one Barber and one Hickey and one Strauss and others, was examined December 24, 1898, by the Civil Service Commission of the City of Chicago, pursuant to an order of said Commission directing the secretary to call examinations for the positions of superintendent of horses and assistants.

There was then in force a classification of the offices and places in the Civil Service of the City of Chicago in classes, divisions and grades. The division in which the position of superintendent of horses fell was division L, the class was class A, and the grade (based entirely on compensation) was the fourth grade.

The division in which the position of assistant super-
intendent of horses fell was L and the class A, but the
grade was the fifth grade. There was also in force
the following rule promulgated by the Civil Service
Commission:

"5. Grouping of Grades. Any two or more of the
grades herein established in any division may be
grouped together and treated as one grade for the
purpose of facilitating examinations for original en-
trance to the service or for promotion therein."

The Civil Service Commissioners November 15, 1898,
by order entered in the minutes of the Commission,
directed their secretary to "call examinations for the
following positions and to advertise the same according
to law; * * * superintendent of horses and as-
sistants."

Proper notice by advertisement was made, in which
it was stated:

"The Civil Service Commission of Chicago will hold
original entrance examinations of applicants * * *
for the following positions: * * * Superintend-
ent and assistant superintendent of horses (Police De-
partment), Class A, Division L, on Saturday, Decem-
ber 24, 1898. * * * Applications filed for either
superintendent or assistant superintendent will entitle
the applicants to enter both examinations. The one
attaining the highest average shall be eligible for certi-
fication as superintendent; those next in rank to be
eligible for assistant superintendents."

On the examination Barber passed at the head of
the list and was appointed to the position of superin-
tendent of horses. Strauss passed second but either
did not accept any position, or having been appointed
assistant superintendent of horses afterwards resigned.
Hickey stood third and the petitioner in this case,
James F. Carson, fourth.

Up to January 30, 1901, the petitioner had not been
certified for any position, no requisition on the eligible
list for assistant superintendents having apparently
been made. On that day the Civil Service Commis-

sioners adopted a rule confirming, as they stated, a previous ruling, that a man who had taken an examination covering more than one grade had exhausted his rights when he accepted any position, no matter in what grade. April 11, 1901, a requisition having been made by the superintendent of police for one or more assistant superintendents of horses, either Hickey and the petitioner were both certified and appointed, or Hickey having been theretofore certified and appointed, the petitioner Carson was alone on that date certified and appointed. In either event Barber was serving as superintendent of horses and Hickey and the petitioner were serving as assistant superintendents of horses from April 11, 1901, until March 23, 1908. In the City appropriation bill for 1908 the city council did not appropriate for any compensation for assistant superintendents of horses, and on March 23, 1908, Hickey and the petitioner were laid off the service of the City. Hickey obtained employment as patrolman on the police force and still occupies that position. Barber continued to be superintendent of horses—compensation for that position being annually to the present time appropriated for—until December 11, 1911, when he died. January 12, 1912, the petitioner made a demand upon the Civil Service Commission of the City of Chicago to certify him to the superintendent of police for the position of superintendent of horses by virtue, as his pleadings indicate, of his having passed fourth on the list in the examination before described of December 24, 1898, and Strauss and Hickey having waived or forfeited their rights to precedence, and because there were in force and had been since May 1, 1909, the following sections of rule 10 of the Civil Service Commission:

"*Section 2.* Lay-Off. Whenever it becomes necessary in any bureau through lack of work or funds, or for other cause, to reduce the force in any employment, the person working in such bureau who was

last certified for such employment shall be the first laid off.   *   *   *

"*Section 3.* Reinstatement. Upon requisition to fill vacancies officers or employes laid off as provided in section 2 of this rule shall be reinstated, according to seniority, in the positions formerly held by them, or to positions of the same character in the same grade."

The demand for certification and appointment having been refused, Carson brought this suit for a mandamus on January 19, 1912, with the result previously mentioned. The pleadings of the defendant allege that pending the suit on May 8, 1912, the Civil Service Commission ordered an examination for the position of superintendent of horses in the police department to fill the vacancy caused by the death of Barber; that proper notice was given and the examination held; that of eighteen applicants eight persons passed and one of them was appointed to the position by the superintendent of police.

The question before us is whether, assuming the matters heretofore recited to be true, they furnish by themselves justification for the drastic and peremptory order of the Circuit Court on the City of Chicago forthwith to appoint Carson superintendent of horses and allow him to enter on his duties. We do not think they do.

In the first place, the writ of mandamus will not be awarded in a doubtful case, but only where the right of the relator or petitioner "is clear and undeniable." *People ex rel. Brownrigg v. Brentano,* 259 Ill. 359; *People ex rel. Molchan v. City Council City of Streator,* 258 Ill. 273.

In *Kenneally v. City of Chicago,* 220 Ill. 485, in which case a mandamus involving the Civil Service of the City was demanded, the Supreme Court quoting approvingly from prior cases, said: "The court exercises a discretion in granting or refusing the writ, and, if the right be doubtful, it will be refused. It has been held that the writ will be refused where the granting of it will disarrange the public service."

We think both that the final granting of this writ, assuming the statements of the pleadings to be true, would disarrange the public service and that the right of the petitioner is more than doubtful.

Counsel for petitioner in his argument asserts that the court below held that the refusal of appellant to install appellee in the office of superintendent of horses "amounted to a direct and positive violation of the Civil Service Act" and "a subterfuge to avoid the beneficial provisions of that Act."

We do not take that view, and we hold that exercise of our discretion is demanded in this appeal, as was that of the trial court below. It is not thought necessary by us to enter into a detailed analysis of all the factors determining our conclusion. Some of them are these: In respect to the original examination it is plain that whether or not the rules and procedure of the Civil Service Commission were reasonable or regular in providing for a grouping of the examinations for the different positions of superintendent of horses and assistant superintendent of horses, the commission did so group them, and advertised and conducted them on the theory that the examination was a double one, to be viewed in a double aspect, and to result in separate appointments to separate positions, which appointments were subsequently made and accepted. The petitioner accepted the position of assistant superintendent and did so while a rule of the Civil Service Commission was in force providing that by such acceptance he had exhausted his rights under the examination.

Again there was a rule of the Civil Service Commission in force at the time the vacancy occurred, appointment to which the petitioner demands, providing that all eligible lists resulting from any examination should be cancelled in two years and a day from the date of the posting thereof. It was a reasonable rule in our opinion and in any event was made under an express power granted to the Commission by the

Legislature. Its existence is alleged in the pleadings of the defendant. It was more than twelve years after the posting of the eligible list on which Carson's name appeared before the vacancy in question occurred.

When the order for the mandamus was made the place had been filled by another than the petitioner, certified to the superintendent of police by the Civil Service Commission as the result of an examination regularly called for the position of superintendent of horses. Again, all appointments under the Civil Service Act are probationary for a period in the discretion of the Commission.

To hold that under these circumstances the granting of the writ of mandamus, if it depended on the existence and nature of the eligible list which was the outcome of the examination of December 24, 1898, was the enforcement of a clear and undoubted right and would not "disarrange the public service," would seem to us manifest error.

The main reliance of the petitioner, however, is not upon the results of the examination of December 24, 1898, or on the eligible list which was the outcome thereof, but upon the rules of the Civil Service Commission adopted May 1, 1909, as sections 2 and 3 of rule 10, and hereinbefore set forth. They are on lay-off and reinstatement, and the provision upon which the petitioner lays emphasis is that employees laid off through lack of funds shall be reinstated (upon requisition to fill vacancies) according to seniority, in the positions formerly held by them *or to positions of the same character in the same grade.*

The contention of petitioner is that he was laid off from the position of assistant superintendent of horses through lack of funds; that a requisition was made to fill a vacancy not in the position formerly held by him, but in "a position of the same character in the same grade."

The contention of the City in this regard is that the position of superintendent of horses is not "a position

of the same character in the same grade" as that of assistant superintendent of horses, and that the rule does not apply.

Under the common use of words the positions of a superintendent and of an assistant superintendent, of horses or of anything else, are of the same character but certainly not of the same grade. The rules of the Civil Service Commission have, however, laid down a technical meaning for the word "grade," and this therefore must be looked upon as of chief importance in determining the question whether the positions are in the "same grade."

As the rules of the Civil Service Commission stood at the time of the examination of the petitioner, at the time of his certification and appointment and at the time he was laid off for lack of funds, there could be no doubt that it had declared the positions of the superintendent of horses and assistant superintendent of horses to be of different grades.

The rule then was, that all positions compensated by more than $1,400 and less than $1,600, as was that of the superintendent of horses, were of the "fifth grade," and all those compensated by more than $1,200 and less than $1,400, as was that of assistant superintendent of horses, were of the "fourth grade."

In October, 1907, the Supreme Court of Illinois, in a case in which the question was whether for the purposes of a competitive promotional examination the "rank or grade" of ward superintendent was next below that of assistant superintendent of streets in charge of street and alley cleaning, although there were several "grades" between them, based, as those grades were by the rule solely on salary—positions, that is—entirely out of the line of employment or service relating to the care or cleaning of streets,— naturally held that in determining what grade was next lower to another for the purposes of a promotional examination, the next lower grade *in the same line of service* should be selected; saying that "common sense

and the spirit of the Civil Service Law would naturally suggest'' this. In speaking of "grades" and the rule of the Commission then in force the Court said:

"In view of the complexity of the service it would probably be next to impossible to devise a reasonable and practicable classification without taking into account the salary carried by the various offices or places. The promotion scheme that enters into the civil service system is based on the idea of a salary classification. * * * "While a salary basis seems to be an essential element in any system of classification, yet a little reflection will show that any hard and fast rule based exclusively on salary, leaving out of view every other consideration, would be impracticable, and defeat, in many cases, the purposes of the system. * * *

"But, as above pointed out, it is admitted that the ward·superintendents are the next grade below the assistant superintendent of streets in charge of street and alley cleaning, unless the salary test alone is to determine the grade. This, we have sought to show, is not the sole test, *but that the salary only determines the grade among those in the same line of employment.* * * *

"Our conclusion is, that the ward superintendents, under the law and under the facts of this case, are next in order or grade to assistant superintendent of streets in charge of street and alley cleaning."

The Civil Service Commission, apparently in order to meet the suggestions of this opinion and to prevent the arising of difficulties like that discussed in the case of *People v. Errant*, 229 Ill. 56, changed or amended their rules by adding or substituting this clause concerning "grades":

"Section 5. Grades Based on Duties. The terms of 'rank' and 'grade' in the civil service act and in these rules shall be considered synonymous. Duties shall determine the class of service and division of any particular position. Except in Division A A (executive service), positions within divisions shall be graded uniformly, according to the authority, responsibility and character of regular duties attaching thereto. The

grade of an officer or employe shall not be raised except by examination under these rules.''

April 9, 1910, the rules were still further amended by adding:

''Division I—Miscellaneous Service. Positions in Division I are graded or ranked respectively according to duties, authority and responsibility in the various departments of the public service to which they are attached and shall be ranked or graded as the commission may determine at the time the positions are classified.''

There is nothing, we think, in the opinion in the *Errant* case, or in the additional, amended or substituted rules, which necessarily makes the grade of assistant superintendent of horses the same as the grade of superintendent of horses; while according to the natural signification of the words and to the rules in force before May 1, 1909, the two positions are plainly not of the same grade.

The ''amended replication'' of the petitioner (filed January 31, 1913) to the answer of the defendant, with the intention of bringing the question at issue under the later rules of the defendant, alleges that: ''The petitioner's duties, authority and responsibility as assistant superintendent of horses were the same as were the duties, authority and responsibility of the superintendent of horses''; and then proceeds with a description of those duties.

But the ''Rejoinder to the Amended Replication,'' which is the particular pleading of which the demurrer of the petitioner that the Circuit Court sustained admits the truth, categorically ''denies that the duties, authority and responsibility of the petitioner as assistant superintendent of horses were the same as the duties, authority and responsibility of the superintendent of horses''; and after denying that the petitioner's specific duties were those attributed to him by the amended replication, sets forth the duties of the superintendent of horses as prescribed by the rules and regulations of the department of police, and asserts that

the assistant superintendent of horses has no duties prescribed for him by rule other than performance of such work as the superintendent of horses shall from time to time assign to him. It then proceeds to allege that there were two assistant superintendents of horses; that neither one of them had more authority than the other; that both of them were subordinate in all matters to the superintendent of horses and acted under his direction and performed such duties as he assigned them, and that in no part of the classified service of the City of Chicago. do the rules of the Civil Service Commission make an assistant of the same grade as the employee to whom he is an assistant.

We see no proper ground for sustaining the demurrer to this rejoinder and ordering the mandamus to issue. The judgment of the Circuit Court is reversed and the cause remanded to that court for further proceedings not inconsistent with this opinion, and with instructions to overrule the demurrer to the defendant's rejoinder.

*Reversed and remanded.*