JOHN A. STOTT

*v.*

THE CITY OF CHICAGO *et al.*

*Opinion filed October 26, 1903—Rehearing denied December 4, 1903.*

1. OFFICERS—*officer seeking to compel payment of compensation must show he holds de jure.* An officer seeking to compel payment of compensation by *mandamus* must show that he is an officer *de jure*, and not merely an officer *de facto.*

2. PLEADING—*when allegation of appointment to office is not sufficient.* In a petition for *mandamus* to compel the re-instatement of petitioner's name upon the city pay-roll as a police patrolman, an allegation that petitioner "was *duly* appointed to the office of police patrolman" is not sufficient to show such appointment.

3. SAME—*courts do not take judicial notice of ordinances.* One relying upon a city ordinance as the authority for his appointment to office must allege and prove the same, since a city ordinance is not a public law of which the court will take judicial notice.

4. SAME—*party must allege facts showing his right to office.* One whose right to relief depends upon his right to an office must allege facts from which courts may determine such right as a legal conclusion.

5. SAME—*what must be alleged to bring petitioner within Civil Service act.* To bring within the Civil Service act one petitioning for *mandamus* to compel the re-instatement of his name on the city pay-roll as police patrolman, the petition must show that the office of police patrolman is in the classified service, and that it is not within the provisions of section 11 of the act excluding certain officers from such service.

6. SAME—*demurrer is carried back to first defect of substance.* On general demurrer the court will give judgment against the party whose pleading was first defective in substance, notwithstanding the defect in the pleading demurred to.

*Stott* v. *City of Chicago*, 98 Ill. App. 105, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

This is an appeal from a judgment of the Appellate Court affirming a judgment of the superior court of Cook county dismissing the petition of appellant praying for

a writ of *mandamus* to the city of Chicago, the mayor and superintendent of police thereof, respectively, commanding them to place petitioner's name upon the police pay rolls of said city of Chicago, to the end that petitioner might draw the pay of a police patrolman.

On the 20th day of June, 1900, appellant filed his petition in the superior court of Cook county, in which it is alleged that the city of Chicago is organized under the general law relating to cities and villages; that Carter H. Harrison is, and ever since the month of April has been, the mayor of said city; that from the 18th day of April, 1881, there has been, and still is, "an executive department" of the municipal government of said city of Chicago, "known as the department of police, which department was created by an ordinance of said city of Chicago, and by which ordinance said executive department was made to, and does, embrace the superintendent of police and secretary to said superintendent, one captain of police for each police district, and such number of lieutenants, detectives, sergeants and police patrolmen as has been or may be prescribed by ordinance;" that by the ordinance creating said department there was created the office of superintendent of police, which by the provisions of said ordinance was to be filled by appointment by the mayor of said city, by and with the advice and consent of the city council of said city, on the first Monday of May, 1881, and bi-annually thereafter; that Joseph Kipley was on the first Monday of May, 1897, duly appointed by the mayor of said city as such superintendent, and by re-appointment has continued to be, and still is, such superintendent; that on the first day of December, 1890, petitioner was a citizen of the United States above the age of twenty-one years, and for more than two years had been a continuous resident of the city of Chicago and was then a qualified elector of said city; that he had never been a defaulter to the said city; that in the month of December, 1890, said pe-

titioner was duly appointed to the office of police patrolman in the said department of police in said city, and thereupon took the oath of office prescribed for such policemen to take, and at once entered upon his official duties as such police officer, and has held said office of police patrolman from thence hitherto; that petitioner still is a police patrolman of the city of Chicago, duly appointed and qualified and entitled to all the rights and privileges of said office; that petitioner took the prescribed civil service examination, which he passed as duly qualified for said office; that by reason of such examination and prior military service petitioner was entitled "to stand at the head of eligibles for appointment upon the police force of said city;" that on March 14, 1898, the superintendent of police of said city "arbitrarily, wrongfully and without legal excuse" caused petitioner's name to be dropped from the police pay-roll, and that by reason thereof petitioner has since been unable to obtain payment of his salary as a police patrolman; that defendants, or some of them, claim that said action of the police superintendent was tantamount to a discharge of petitioner as a police patrolman, which the petitioner denies; that no charges were ever preferred against petitioner, no trial had, no report to the city council of such discharge by the mayor, nor were any reasons presented therefor by said mayor or other person; that for nearly three years prior to March 14, 1898, petitioner was, from month to month, duly certified by the civil service commission upon the police pay-rolls of said city as a patrolman entitled to pay, and payment was made from month to month; that various appropriations had been made for the payment of police patrolmen, including petitioner.

Pleas were filed, to which demurrers were sustained as to all except the third. Demurrer to the third plea was overruled and petitioner elected to stand by his demurrer, on which judgment was rendered dismissing the

petition. The sufficiency of both the petition and the plea is, under the pleadings, presented for consideration.

The principal averments of said plea were, that the petitioner had not been a police patrolman of the city of Chicago since March 14, 1898; that on that date petitioner was "discharged by Joseph Kipley, superintendent of police of the said city of Chicago, by and with the concurrence and assent of the said Carter H. Harrison, mayor of said city of Chicago, and the civil service commission of said city of Chicago;" that he was discharged for the good of the service, and in the judgment of his superior officers he was an inefficient officer, and because of the insufficiency of appropriations for the payment of the salaries of police patrolmen the discharge of some of them was necessary. The order under which it is claimed petitioner was discharged is as follows:

"CITY OF CHICAGO, DEPARTMENT OF POLICE.
*Joseph Kipley, Chief of Police.*

General order No. 10.

"All patrolmen of the 21st, 22d, 23d, 24th, 27th, 28th, 29th and 30th precincts of the third division, not certified for appointment by the civil service commission, are hereby discharged from the force, to take effect at 5 P. M. this date. All patrolmen affected by the above order will report at the office of the civil service commission for certification, in the following order: 21st, 22d, 23d, 24th, 25th precincts at 5 P. M.; 27th, 28th, 29th and 30th precincts at 6 P. M.

JOSEPH KIPLEY, *General Superintendent.*"

It is further averred that sections 1481 and 1482 of the Revised Code of Chicago, passed April 8, 1897, were in force March 14, 1898, and were as follows:

"Sec. 1481. The superintendent shall have the management and control of all matters relating to the department, its officers and members.

"Sec. 1482. Said superintendent shall have power to remove from the police force any police patrolman, and with the concurrence of the mayor he may remove or reduce in rank any officer or member of said department."

It is further averred that by the word "superintendent," contained in said sections, is meant the superintendent of police of the city of Chicago; that an act of the legislature entitled "An act to regulate the civil service of cities," was adopted by the city of Chicago in the prescribed method, and became in force in said city in August, 1895; that all the police patrolmen of the police department of said city are civil service employees; that if petitioner is granted a writ of *mandamus* restoring him to the position of police patrolman he will crowd out and displace a civil service employee duly examined, certified and appointed.

W. P. BLACK, and A. B. CHILCOAT, for appellant.

CHARLES M. WALKER, Corporation Counsel, and ROSWELL B. MASON, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

The position assumed by appellant in this case, as we understand it from the brief and argument, is, that this application or petition is for the purpose of restoring him to the pay-rolls, his contention being that he is still a police patrolman of the city of Chicago and that his pay is illegally withheld. He alleges in his petition that in 1890 he was appointed to the office of police patrolman, and served in that capacity and received his compensation thence to the 14th day of March, 1898, when, as he contends, without lawful authority his name was dropped from the pay-roll. He alleges further that the defendants claim that he was removed from office, but this he denies, and asserts that at that time the Civil Service act was in operation in the city of Chicago, and that he could not be removed from office except in compliance with that act, and that the plea interposed does not sufficiently show that he was removed in the manner pointed out by that act, and that if that act be held not applicable to his case, then he could only be removed

from office by the mayor, who was required by the statute to report his removal to the city council for its action, and if the city council should by a two-thirds vote of all its members authorized by law to be elected, by yeas and nays disapprove of such removal, he would thereby become restored to his office; that the plea fails to aver sufficiently that he was removed by the mayor or that the mayor ever reported his removal to the city council, and that therefore, in any event, his removal became ineffectual.

The writ of *mandamus,* though no longer a prerogative writ, only becomes a writ of right when it shows upon its face that the petitioner has a clear right to the relief he seeks. (*Swift* v. *Klein,* 163 Ill. 269.) According to appellant's own contention, the main purpose of his application for the writ is to entitle him to receive or enforce the payment of his compensation. Although, as between himself and the public, he may be a *de facto* officer, and his official acts be given the force and virtue of the acts of an officer *de jure,* yet when the case is the assertion of his individual right, based upon his official character, he is required to show that he is an officer *de jure.* (*Home Ins. Co.* v. *Tierney,* 47 Ill. App. 600; *People ex rel.* v. *Weber,* 86 Ill. 283; *Same* v. *Same,* 89 id. 347; *People* v. *Tierman,* 30 Barb. 193; *People* v. *Hopkinson,* 1 Denio, 574.) In *People ex rel.* v. *Weber,* 86 Ill. 283, it is said: "But it is said he was *de facto* such officer. We believe the rule to be, when one claims rights as an officer by virtue of his office he must show that he is legally entitled to act; that he is an officer *de jure* as well as *de facto.* The acts of the former are valid and effectual everywhere, for he is clothed with all the power and authority appertaining to the office, and his acts, within the limits of his authority, cannot be questioned anywhere. The acts of a *de facto* officer are valid only so far as the rights of the public, or of third persons having an interest in such acts, are involved. But such officer can claim nothing for himself,"

And in *People* v. *Tierman*, *supra*, it is said: "Possession under color of title may well serve as a shield for defense, but cannot, as against the public, be converted into a weapon of attack to secure the fruits of usurpation and the incidents of the office." In *People* v. *Hopkinson*, *supra*, it is said: "Clearly he cannot recover fees or set up any right of property on the ground that he is an officer *de facto* unless he be also an officer *de jure.*" "An officer *de jure* is one who is clothed with the full legal right and title to the office,—in other words, one who has been legally elected or appointed to an office, and who has qualified himself to exercise the duties thereof according to the mode prescribed by law." (23 Am. & Eng. Ency. of Law,—2d ed.—327.)

In his petition appellant does not state how he was appointed to office or by whom; but it is said that although he took the civil service examination and passed with a grade of 100 upon a scale of 100, and was entitled to be certified for admission to the classified service under the Civil Service act, he was denied such certification and was not in fact appointed under the Civil Service act. His contention is, that he was appointed in compliance with the provisions of the statute as found in the act "for the incorporation of cities and villages." The office of policeman or police patrolman was unknown to the common law, and wherever such office exists it is the creation of statute law or the creation of municipal ordinances. The officers expressly provided for municipalities by statute are "a mayor, a city council, a city clerk, a city attorney, and a city treasurer." (Starr & Cur. Stat. 1896, chap. 24, art. 6, sec. 1.) Also by section 2 of article 6 of said act it is provided: "The city council may, in its discretion, from time to time, by ordinance passed by a vote of two-thirds of all the aldermen elected, provide for the election by the legal voters of the city, or the appointment by the mayor, with the approval of the city council, of a city collector, a city marshal, a city

superintendent of streets, a corporation counsel, a city comptroller, or any or either of them, and such other officers as may by said council be deemed necessary or expedient." Policemen and police patrolmen, not being specifically mentioned in the act, must come within the designation of "such other officers as may by said council be deemed necessary or expedient," and until the city council, in the exercise of its discretion, passes an ordinance, by a two-thirds vote of all the aldermen elected, providing for such office of policeman or police patrolman, and providing the manner in which it shall be filled, whether by election or appointment, it cannot be said any such office exists. If the city council does by ordinance provide for such an office, and also provides that the office shall be filled by appointment, then the appointment is controlled by section 3 of article 6, *supra*, which provides: "All officers of any city, except where herein otherwise provided, shall be appointed by the mayor, * * * by and with the advice and consent of the city council." By section 4 of the same article all officers, whether elected or appointed, are required to take the oath therein prescribed, and all officers, except aldermen and trustees, are required, before entering upon the duties of their respective offices, to execute an official bond; and by section 5 of the same article all officers elected or appointed, except the clerk, aldermen, mayor and trustees, are to be commissioned by warrant under the corporate seal, signed by the clerk and the mayor or presiding officer of the city.

The petition in this case avers that in April, 1881, an executive department of the municipal government of the city of Chicago, known as the department of police, was created by ordinance of said city, and that said department embraces the "superintendent of police and secretary to said superintendent, one captain of police for each police district, and such number of lieutenants, detectives, sergeants and police patrolmen as have been

or may be prescribed by ordinance." The petition also alleges that the ordinances creating the said office of superintendent of police provided that the same should be filled by appointment by the mayor of said city, by and with the advice and consent of the city council, and that Joseph Kipley, superintendent of police, was duly appointed to that office on the first Monday of May, 1897, and by re-appointment continued to be, and still is, such superintendent. The petition then alleges "that on the first day of December, 1890, petitioner was a citizen of the United States above the age of twenty-one years, and for more than two years has been a continuous resident of the city of Chicago, and was then a qualified elector of said city; that he had never been a defaulter to the said city; that in the month of December, 1890, said petitioner was duly appointed to the office of police patrolman of the said department of police in said city, and thereupon took the oath of office prescribed for said policemen to take and at once entered upon his official duties as such police officer, and has held such office of police patrolman from thence hitherto; that petitioner still is a police patrolman of said city of Chicago, duly appointed and qualified and entitled to all the rights and privileges of said office." It is further averred that the pay-roll upon which petitioner's name appeared was certified for payment, and payment made up to March, 1898. Petitioner alleges no facts concerning his appointment to office. It is nowhere alleged in the petition that the city council, either after or before creating the department of police, did, by ordinance passed by a "two-thirds vote of all the aldermen elected" or "by ordinance duly passed," prescribe the number of police patrolmen, or for the election or appointment of any policeman or police patrolman, that should be elected or appointed, or whether the said office should be filled by election or appointment. In the seeming immaterial matter of the appointment of the superintendent of police, appellant

205—19

expressly alleges that his appointment was provided for by ordinance, but as to the appointment of appellant, so far as shown by any allegation in the petition, there appears no authority whatever. As we have said, if the appellant was appointed police patrolman it must have been under authority of some ordinance authorizing his appointment. Whatever may be the rule obtaining in municipal courts, there can be no question but that the rule as applied to the general State courts is, that they will not take judicial notice of municipal ordinances, but such ordinances must be specially pleaded, where the action or the right to the relief sought is predicated upon such ordinances. "The general rule is, that State courts of general jurisdiction will not take judicial notice of municipal ordinances. A municipal ordinance is not regarded in the light of a public law, of which the courts should take judicial notice, but the party relying thereon must allege and prove it as a matter of fact." 17 Am. & Eng. Ency. of Law, (2d ed.) 937; 15 Ency. of Pl. & Pr. 425; *Illinois Central Railroad Co.* v. *Godfrey,* 71 Ill. 500; *Blanchard* v. *Lake Shore and Michigan Southern Railway Co.* 126 id. 416.

Appellant contends, however, that the allegation in his petition that he "was duly appointed to the office of police patrolman in the said department of police in said city, and thereupon took the oath of office prescribed for such policemen to take, and at once entered upon his official duties as such police officer, and has held such office of police patrolman from thence hitherto," is a sufficient allegation, and is the usual allegation adopted and approved in such forms of procedure, and that by the use of the word "duly" there is implied in the allegation a sufficient averment of the existence or passage of whatever ordinance is necessary. To this contention we cannot accede. If the office of police patrolman had been one provided by statute or some general law of which it was the duty of the court to take judicial notice, then there is authority for holding that the word "duly" means

in a regular and legal manner, or as said in some of the cases, "in the proper way; regularly; according to law;" but, as we have said, the courts of general jurisdiction of the State do not judicially know of any law except those laws of a general character and applicable generally to the municipality and the citizens of the State, and to hold that by merely alleging that he was duly appointed appellant has made such an allegation as authorizes him to offer any class of evidence that will tend to support his office, would simply be placing it within the power of appellant to determine for himself what was the legal manner of his appointment, and to also plead the legal conclusion, without setting out the facts showing that he was legally appointed. It may be, if appellant were an officer of the city or of the county, whose election or appointment is expressly provided for by statute, that the allegation that he was duly appointed might be regarded as sufficient by the courts. We do not wish to be understood as laying down the rule that in such cases such an allegation would be sufficient where the *de jure* right of the officer was the essential basis of the action. The general rule, as we understand it, is, that where the question is one of office, the burden is upon the pleader to show his right to the office. He must plead the facts from which the legal conclusion of that right may be drawn by the court, and not alone by the pleader. (*Lavalle* v. *Soucy*, 96 Ill. 467; *People ex rel.* v. *Town of Mount Morris*, 145 id. 427; 2 Spelling on Extraordinary Relief, sec. 1643.) "The word 'duly,' when used in a complaint, is generally a conclusion of law. Denying that an act was duly done raises no issue." 1 Ency. of Pl. & Pr. 807.

In the case at bar, if appellees had traversed the allegation of the petition and had denied that appellant was legally and duly appointed, we do not think such an allegation and denial would have formed an issue of fact to be tried by the court, but would have been a mere conclusion of the pleader. "Averments that certain

transactions 'were unlawful, illegal or wrongful' have been held to be mere conclusions of law, unless from the facts stated the unlawfulness, illegality, etc., appear. And so an allegation that a certain thing has been 'duly' given, executed or performed, is generally held to be only a legal conclusion." 12 Ency. of Pl. & Pr. 1033.

The case of *Beach* v. *King,* 17 Wend. 197, would seem to be directly in point. In that case the plaintiff declared on the common counts. The defendant pleaded that the plaintiff's right to the money mentioned in the declaration, if any, is as one of the next of kin of Nicholas Beach, deceased; that he, the defendant, was duly appointed administrator of the goods, etc., of the said Nicholas Beach, and that the plaintiff had not, before the commencement of the suit, executed a bond with sufficient sureties to indemnify the defendant, and to refund, etc. Upon demurrer to the plea the court said: "The exceptions taken to the plea are: (1) It is not alleged that letters of administration were granted to the defendant nor any letters of administration brought into court; and (2) it does not appear by whom the defendant was appointed administrator nor whether he was appointed under the laws of this State. The defendant cannot be administrator unless letters of administration of the goods, chattels and credits of the intestate has been granted to him by one of the surrogates of this State. * * * The proper mode of pleading the fact is by a direct allegation that such letters were granted. The defendant has not pursued that course, but pleads that he was duly appointed administrator. This allegation consists partly of matter of fact and partly of matter of law, and is not capable of trial. That the defendant was appointed administrator by somebody or in some form is a question of fact; but whether he was duly appointed or not is a question of law. The defendant should have stated how he was appointed, and then the court could determine its sufficiency upon demurrer, or if an issue to the country

were joined upon the fact of having obtained letters, the question could be tried by jury."

Nor are the allegations of the petition sufficient to bring appellant within the protection of the Civil Service act. The only allegation concerning that act is, "that on December 18, 1897, by order of the superintendent, petitioner took the civil service examination as to his qualifications as a police patrolman, which examination was taken under the civil service commission of the city of Chicago, which city had theretofore adopted the Civil Service act, so-called, and was then under said Civil Service act and governed thereby, upon which examination petitioner was passed as qualified, standing 100 upon a scale of 100; that petitioner was a soldier in the United States Volunteers during the war of 1861-65, and held at the time of such examination an honorable discharge; that by reason of said military service and discharge, and having passed said examination 100, petitioner was entitled, on report thereof, to stand at the head of eligibles for appointment on the police force of said city." There is also an allegation that the pay-roll was certified by the civil service commission from 1895 to 1898. These are all the allegations relative to the Civil Service act, and it may well be doubted if there was a sufficient allegation that the act was even adopted by the city. But should it be conceded that the allegation is sufficient to show the adoption of the act, much more is required to show that appellant is brought within the provisions of that act. By section 3 of the act (Hurd's Stat. 1901, p. 365,) to regulate the civil service of cities it is provided: "Said commissioners shall classify all the offices and places of employment in such city with reference to the examinations hereinafter provided for, except those offices and places mentioned in section 11 of this act. The offices and places so classified by the commission shall constitute the classified civil service of such city; and no appointments to any of such offices

or places shall be made except under and according to the rules hereinafter mentioned." Conceding that appellant was appointed to the office of police patrolman, it would still be necessary for him to show that the civil service commission had classified the offices, and that the office held by him was placed in the classified service, and was not an office or place mentioned in section 11 of the act. Section 11 of the act provides: "Officers who are elected by the people, or who are elected by the city council pursuant to the city charter or whose appointment is subject to confirmation by the city council, * * * shall not be included in such classified service." If, then, appellant was appointed by the mayor and confirmed by the city council his office is one that is especially excepted from the operation of the Civil Service act; and if appellant's office was one not within the exception made by section 11, but was one to which the general provisions of the Civil Service act applied, then the allegations of his petition failed to bring him within section 12 of the act, which relates to removals, and provides: "No officer or employee in the classified civil service of any city, who shall have been appointed under said rules and after said examination, shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard in his own defense." In his petition he fails to allege that the civil service commission had classified the office, or had made rules to carry out the purposes of the act and for examinations, appointments and removals, as required by section 4 of the act, and wholly fails to show by his petition that he was in the classified service, or that he had been appointed under any rules relative to that service "after an examination," but, on the contrary, he shows that he was not appointed after an examination, but was removed after the examination and before the certification. We regard the petition in this case so lacking in substance that it was obnoxious to general demurrer.

Upon such a petition can it be said that appellant has shown a clear right to have the thing sought by him done, and by the person or body sought to be coerced? Appellant demurred generally and for substance to appellees' plea, and by such demurrer brought before the court not only the sufficiency of the plea, but of the petition also. "It is an established rule that upon the argument of a demurrer the court will, notwithstanding the defect of the pleading demurred to, give judgment against the party whose pleading was first defective in substance." (*Cleveland* v. *Skinner*, 56 Ill. 500.) In *Illinois Fire Ins. Co.* v. *Stanton*, 57 Ill. 354, it is said (p. 359): "By the well settled principles of pleading, the demurrer would reach back to the first error in the pleadings, and the consequences of a defective pleading will rest upon the party committing the first error, and the applicant cannot complain that a defective replication was allowed to stand to a defective plea. If the replication was bad the plea is also bad, and both would fall together." See, also, *Barrow* v. *Window*, 71 Ill. 214.

Entertaining the views above expressed as to the petition in this case, and under the state of the pleadings, it would seem unnecessary to extend this opinion to a discussion of the merits of appellees' plea.

We are urged by appellant to decide this case upon its merits, and the reason assigned is, that the questions presented are important as affecting not only the rights and duties of the city, but other persons who claim rights under the Civil Service act. It may be that the questions presented are of importance and should be settled by the courts. That matter can only be determined when the questions are properly raised upon sufficient allegations in the petitions or pleas, that this court may have before it all the law and ordinances relative to the appointment and removal of officers, which must be considered together with the Civil Service act. In the present case we are left to surmise the manner of appointment of the

appellant. Whether he was appointed by the superintendent of police or by the mayor is left as a mere matter of argument, and we are unwilling to assume the material facts that should be contained in the pleadings in order to express our opinion upon the questions that may arise under the Civil Service act.

The superior court of Cook county rendered a judgment against appellant upon the pleadings. This judgment was affirmed by the Appellate Court, and we think properly; hence the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*