People of State of Illinois ex rel. Patrick W. Malone,
Appellee, v. Edwin Mueller et al., Appellants.

Gen. No. 10,056.

Opinion filed March 8, 1946. Opinion modified and re-hearing denied May 17, 1946. Released for publication May 17, 1946.

BARTLEY & YOUNGE, of Peoria, for appellants; JOSEPH F. BARTLEY and THOMAS B. KENNEDY, both of Peoria, of counsel.

CHAMPION, GASKINS & LEE, of Peoria, and LONDRIGAN & LONDRIGAN, of Springfield, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

In the month of April 1933, Patrick W. Malone retired as second assistant fire marshal of the fire department of the City of Peoria. Shortly thereafter, he made written application for a pension as a retired fireman, to the Board of Trustees of the Firemen's Pension Fund of the City of Peoria. On May 3, 1933, the board granted him a pension of $75 per month, which was one half of his salary when he retired. This pension was paid to him until May 7, 1935, when he was appointed first assistant fire marshal. No pension was paid to him during the time he was first assistant fire marshal. Malone resigned as first assistant fire marshal and retired from the fire department, and his pension payments were resumed and paid to him until May 14, 1941, when he began to perform the duties of fire marshal and acted in such capacity until February 1, 1944, when he resigned. Malone did not pay any dues into the firemen's pension fund during the time he acted as fire marshal. The salary of fire marshal was $250 per month, which Malone duly received until May 16, 1943, when he filed a quo warranto proceeding in the circuit court of Peoria county to establish his title to the office of fire marshal. Whether Malone was duly appointed fire marshal is one of the disputed questions in this case. As will hereafter appear, Malone was paid the salary of fire marshal from May 16, 1943, to February 1, 1944, by the City of Peoria.

On February 11, 1944, Malone served written notice on the board of trustees of the pension fund demanding that he be paid a monthly pension of $125 and also $75 a month as his pension money during the time he acted as fire marshal. Malone tendered the board

$165, which was two per cent of the salary of fire marshal during the time he acted as fire marshal, which the board refused to accept. On October 22, 1944, the board advised Malone that it refused to comply with any of his demands.

It was the duty and province of the Board of Fire and Police Commissioners of the City of Peoria to appoint all officers and members of the fire department of that city. The general ordinance of the city creates the office of fire marshal, as chief of the fire department. The office has existed for more than 25 years. The statutory provisions involved in the case are to be found in Chapter 24 of the Revised Statutes under the heading ''Firemen's Pension Fund—Municipalities of 5,000–200,000.'' Pars. 918 *et seq.* [Jones Ill. Stats. Ann. 100.272 *et seq.*].

On November 6, 1944, Malone filed his petition in the circuit court of Peoria county for a writ of mandamus against the members of the Board of Trustees of the Firemen's Pension Fund of the City of Peoria alleging, *inter alia*, that the action of the board in refusing to pay the petitioner $75 a month during the time he was acting as fire marshal and denying his request for a pension of $125 after his resignation as fire marshal, is presumptuous, unlawful, arbitrary and unreasonable. The petition prays for a writ of mandamus commanding the board to forthwith pay petitioner $75 for each month during the period from May 14, 1941, to February 1, 1944, and a pension of $125 per month commencing February 1, 1944.

Two allegations of the petition are denied by the answer of the respondents. These allegations of the petition are herewith set forth. ''7. That on the 14th day of May 1941, the duly qualified and acting members of the Board of Fire and Police Commissioners of the City of Peoria, Illinois, did appoint the said Patrick W. Malone to the office of fire marshal for the City of Peoria, Illinois, and issued to him a certificate

of his appointment to said office on said date, a copy of said certificate being marked, 'Plaintiff's Exhibit A' attached hereto and made a part hereof; that the said Patrick W. Malone entered active service as said fire marshal upon the Fire Department of the City of Peoria on said date receiving a salary of $250 per month which was the salary attached to the rank of fire marshal and that upon said date the Board of Trustees of the Pension Fund of the City of Peoria unlawfully and improperly suspended his monthly pension payments." "13. That there were no terms or provisions in the Statute in effect May 7, 1941, which authorized defendants to suspend pension payments when a retired fireman returned to active service in the fire department. (Chap. 24 sec. 924 Ill. Rev. Statutes, 1939.)"

With their answer the respondents filed five separate defenses, the second one not being urged. The first separate defense is directed to the claim of the petitioner that he is entitled to the pension of $75 per month during the time he was acting as fire marshal. The gist of this defense is that the petitioner received the monthly salary of $250 while acting as fire marshal and petitioner "held himself out to the public as being an active fireman and in the active service of the fire department, and not as retired fireman, and that it was and is contrary to public policy and the law that said Patrick W. Malone should be paid a pension as a retired fireman during the time he was acting and receiving a salary as an active fireman."

The third separate defense is directed to the claim of the petitioner that he is entitled to be paid an increased pension of $125 per month. The purpose of this defense is to set up facts supporting the final paragraph thereof, which is here quoted. "That the said Patrick W. Malone was unlawfully and improperly appointed to said position as fire marshal, and he unlawfully and improperly assumed to act as such

from May 13, 1941, to February 1, 1944, and that at no time was he a *de jure* fire marshal of said City of Peoria, nor at any time more than a *de facto* officer."

It is alleged in the third defense that the petitioner was duly appointed a fireman on June 3, 1901, and on May 20, 1930, he was promoted to the position of second assistant fire marshal and resigned from the fire department on or about April 29, 1933, when he made application to the respondents as a retired fireman for a pension, and was granted a pension of $75 per month on May 3, 1933; that his pension was paid to him monthly thereafter, until he was appointed first assistant fire marshal on May 7, 1935, when his pension was suspended; that petitioner resigned as first assistant fire marshal on May 7, 1937, and his pension was paid to him until he re-entered the fire department as an active fireman, assuming to act as fire marshal on May 13, 1941; that after the petitioner retired as first assistant fire marshal, one Robert Spencer was duly appointed to that position and he has continuously held said position, which during all the time mentioned in the petition was the next lower rank in the fire department to the position of fire marshal.

It is further alleged in the third defense, for the purpose we have above stated, that on May 13, 1944, and at all times prior and subsequent thereto, there were in full force, as required by law, rules and regulations of the Board of Fire and Police Commissioners of the City of Peoria. These rules and regulations are set forth in *haec verba* in the defense. The purport of the rules and regulations appears from the following paragraph of the defense. "That on or prior to the date of such alleged certificate, viz., May 14, 1941, (certificate of petitioner's appointment as fire marshal and Exhibit A. of the petition) the Board of Fire and Police Commissioners of the City of Peoria did not nor did they at any other time (a) receive any application

from the said Patrick W. Malone for his appointment as fire marshal as provided by the rules and regulations of said board, (b) examine the said Patrick W. Malone as to his mental or physical qualifications or other attributes or competency for the position as fire marshal of the City of Peoria, (c) take or adopt any formal action appointing said Malone fire marshal, or (d) actually appoint him as such fire marshal; nor was any examination of any kind ever given to or required of the said Malone in connection with the position of fire marshal of the City of Peoria or his alleged appointment thereto, nor did the said Malone ever take or pass any examination of any kind; that on the 14th day of May 1941, the said Malone was of an advanced age and in his seventy-first year and physically unfit and disqualified to act as fire marshal.''

It is further alleged in the third defense: ''That at no time prior to said May 14, 1941, nor on or after said date did the Board of Fire and Police Commissioners by resolution or otherwise fix any time or place of examination of applicants for the position of fire marshal of the City of Peoria in the fire department, then vacant, nor did said board on or prior to said date or afterwards ever give, post or publish any notice as required by its rules and regulations and the Statute in such cases made and provided of the time and place of any such examination to enable those eligible and who might so desire to take such examination.

''That on said 14th day of May, 1941, and prior thereto since May 7, 1937, and afterwards, the said Malone was not eligible for appointment as a fire marshal of the City of Peoria nor was he eligible to take such examination because he was not a member of the fire department, having resigned and retired therefrom, and such appointment to the vacancy in the office of fire marshal should have been filled by the person holding the next lower rank in said department or some other active member of the fire department on

the basis of ascertained merit and seniority in service and examination as provided in said rules and regulations of said board and the act creating and providing for said board; that Robert Spencer was then legally holding the position next lower rank as first assistant fire marshal and he was thoroughly competent to perform the duties of fire marshal and he was not promoted nor ever given an opportunity to apply. for or take the examination for appointment as. fire marshal to fill such vacancy, nor was any other active fireman in the fire department given any such opportunity.

''That although said Patrick W. Malone had so resigned and separated himself from the fire department on May 5, 1937, and thereafter held no position of any kind on or in the fire department prior to May 13, 1941, and although there was and is no warrant in law for such attempted appointment, nevertheless on said last mentioned date the Mayor of the City of Peoria, unlawfully, assumed to appoint said Patrick W. Malone as fire marshal, and in a meeting of the City Council of said City held on said last mentioned date announced to the Council his purported appointment of Malone as fire marshal, and then and there requested the Council to confirm such appointment, and the said City Council in such meeting thereupon by unanimous vote purported, to confirm such unlawful and unwarranted appointment. That Malone's bond as fire marshal was approved by unanimous vote of the City Council.

''That the next day, on May 14, 1941, the members of the Board of Fire and Police Commissioners of the City of Peoria, acting individually, as a matter of political expediency and because the said Mayor had so unlawfully appointed, and the said City Council had, so unlawfully confirmed said Malone, the alleged certificate of appointment, a copy of which is attached to the petition as ''Plaintiff's Exhibit A;'' that said cer-

tificate was and is colorable and intended to be colorable at the time it was so signed and delivered, and was and is false and untrue and was never intended to be and never was a correct statement of the facts either as to appointment or otherwise.''

The fourth separate defense is directed to the petitioner's claim of an increased pension of $125 per month. This defense in substance is that, at the time of the alleged appointment of petitioner as fire marshal he was more than 35 years of age—past 70 years, and he did not make application to the Board of Trustees of the Firemen's Pension Fund of the City of Peoria under the provisions of the Firemen's Pension Fund Act to come under the provisions of the Act for any increase of pension, nor did he apply for, nor pass a medical examination to determine his physical condition as required by the Act; that petitioner did not make any claim to said pension board for any increase of pension, and he accepted the salary of $250 per month as fire marshal for the whole period from May 13, 1941, to February 1, 1944, without deduction of any amounts for the pension fund as provided by law, and without protesting to the City of Peoria to make such deductions.

The fifth separate defense is directed to both claims of the petitioner, and in particular is set up as a defense to paragraph 13 of the petition. This defense in substance is that under the terms of the Firemen's Pension Fund Act *as amended,* and under which the parties are now operating, petitioner was not entitled to any pension payments while he was assuming to act as fire marshal and in the active service of the fire department; that when petitioner ceased to act as fire marshal he was not entitled to an increased pension, but only to have resumed his monthly pension of $75 per month. (See, Ill. Rev. Stat. 1945, ch. 24, par. 924b [Jones Ill. Stats. Ann. 100.278(2)].)

The petitioner made a motion to strike the answer and each separate defense. The court overruled the motion as to the first separate defense and denied the petitioner's application for a writ of mandamus to compel the respondents to pay him a pension during the period of time he acted as fire marshal. The court sustained the motion as to the 3rd, 4th and 5th defense, and ordered the writ of mandamus directing the respondents to pay to petitioner an increased pension of $125 per month from February 1, 1944, for the remainder of his lifetime. Both parties elected to stand on their respective pleadings, and judgment was entered accordingly. The respondents have appealed contesting the right of the petitioner to an increased pension, and the petitioner has taken a cross-appeal contesting that part of the judgment decreeing that the petitioner is not entitled to his pension while he was receiving the salary of fire marshal. It is conceded by the respondents that the payments of petitioner's pension of $75 per month should be resumed as of the time he resigned on February 1, 1944.

It is to be observed that by the separate defenses the respondents rely on several propositions. 1. That it is against public policy, that the petitioner receive a pension during the time he received the salary of fire marshal. 2. That the petitioner was not legally appointed to the office of fire marshal, and having been a *de facto* officer only, he is not entitled to a pension as retired fire marshal. 3. That the petitioner retired as a fireman in 1937, and having separated himself from the fire department, his appointment as fire marshal (even if such appointment was legal,) did not entitle him to an increased pension as his claim to such increase is barred by section one of the Firemen's Pension Fund Act. The applicable portion of this section will be hereafter considered. 4. That the petitioner's claim to an increased pension is controlled by section 7b of Act which was enacted in 1943. This section will also be hereafter considered.

■ The petitioner's motion to strike the answer and separate defenses admitted the facts directly alleged in the answer and defenses. (*Barzowski v. Highland Park State Bank,* 371 Ill. 412.) The facts stated in the motion to strike are admitted by the respondents. That part of the motion which is reply to the defense that the petitioner was not legally appointed fire marshal will be first considered to determine if he was an officer, (fire marshal,) *de jure* or *de facto.*

It is stated in the motion that in a quo warranto proceeding filed by the states attorney of Peoria County on behalf of the people of the State of Illinois, entitled *The People ex rel. Patrick W. Malone v. John Buchele,* in the circuit court of Peoria county, a final order was entered finding that on May 16, 1943, Patrick Malone was the duly appointed, qualified and acting fire marshal of the City of Peoria. This order was rendered on December 2, 1943.

The final judgment in the quo warranto proceeding the petitioner claims estops the respondents from contesting the claim of the petitioner that he was legally appointed fire marshal, that is, an officer *de jure.* (See *Brack v. Boyd,* 211 Ill. 290.) It appears from the judgment in the quo warranto proceeding that the petition therein, was filed by Lester F. Carson, states attorney in, and for the County of Peoria, suing for the People of the State of Illinois, and in their behalf, and in the name of, and at the request of, and in relation of Patrick Malone, against one, John Buchele. "That on the 16th day of May, 1943, the Board of Fire and Police Commissioners of the City of Peoria, Illinois, purported to appoint the defendant, John Buchele, to the office of Fire Marshal of the City of Peoria." "That on the 16th day of May, A. D. 1943, the relator Patrick Malone was the duly appointed, qualified and acting Fire Marshal of the City of Peoria, Illinois, and that therefore no vacancy existed in the office of fire marshal to which the defendant could be legally ap-

pointed." "It is therefore ordered and adjudged by the Court that the defendant, John Buchele, be and he is hereby ousted, excluded and prohibited from exercising the functions, privileges and prerogatives of the office of Fire Marshal of the City of Peoria, Illinois."

Where one claims rights as an officer, by virtue of his office, he must show that he is legally entitled to act,—that is an officer *de jure* and as well as *de facto*. The title of a *de facto* officer cannot be inquired into in a collateral way between third parties, but it may be inquired into where he is suing in his own right as an officer. (*People ex rel. Sullivan v. Weber*, 86 Ill. 283.) In the case of *Stott v. City of Chicago*, 205 Ill. 281, page 289, it is stated: "And in *People v. Tierman* [30 Barb. 193], *supra*, it is said: Possession under color of title may well serve as a shield for defense, but it cannot, as against the public, be converted into a weapon of attack to secure the fruits of usurpation and the incidents of the office." In *People v. Hopkinson* [1 Denio 574], *supra*, it is said: "Clearly he cannot recover fees or set up any right to property on the ground that he is an officer *de facto* unless he be also an officer *de jure*." "An officer *de jure* is one who is clothed with the full legal right and title to the office,—in other words, one who has been legally elected or appointed to an office, and who has qualified himself to exercise the duties thereof according to the mode prescribed by law." (23 Am. & Eng. Ency. of Law (2nd ed.), 327.)

The Firemen's Pension Fund Act (ch. 24, par. 918, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 100.272]) provides that the term "fireman" or "firemen" as used in the Act shall include . . . "All persons who have been or shall be hereafter appointed to any position which is classified by the civil service commission of such city, in the fire service." The position, if assumed, that the petitioner herein was not

appointed to the office of fire marshal, but was performing the duties of that office as a *de facto* officer, and that he was a "fireman" within the meaning of the said Act, would, in our opinion, be untenable.

The respondents have an interest which is affected by the result of the litigation in this case, and in the quo warranto proceeding on the question of the appointment of the petitioner to the office of fire marshal. (*Healea v. Verne*, 343 Ill. 325.) It is our opinion that the primary purpose of the quo warranto proceeding was to secure an enforcement of the private and personal grievance of the petitioner herein, Malone, that one John Buchele was claiming title to the office of fire marshal, contrary to the claim of Malone that he was the duly appointed fire marshal. (*People v. Fullenwider*, 329 Ill. 65.) That the judgment in the quo warranto proceeding is not binding on the respondents herein, unless it appears from the record before us that the respondents were parties to the quo warranto proceeding or in privity with parties to the proceeding in respect to the subject-matter of the quo warranto proceeding. The interest of a relator, in a proceeding to try title to office, is special and not common to the public; and the judgment is binding only on him and the defendant to the quo warranto proceeding. (*Modlin v. State*, 175 Ind. 511, 94 N. E. 826.) A judgment of ouster in an action in the nature of a quo warranto does not conclude one who is in no sense a party to the action, and does not take from, or in any way hold under the defeated party to the action; nor is it competent evidence against him. (*People ex rel. Gilchrist v. Murray*, 73 N. Y. 535; *People v. Fullenwider*, 329 Ill. 65; *People v. Cassiday*, 50 Colo. 503, 117 Pac. 357, writ of error dismissed 223 U. S. 707, 56 L. Ed. 622; *State v. Broatch*, 69 Neb. 687, 94 N. W. 1016, 110 Am. St. Rep. 477.)

Neither the respondents nor the City of Peoria were parties to the quo warranto proceeding when the judg-

ment of ouster was entered. It appears from the record that on December 21, 1943, the quo warranto suit was redocketed and the City of Peoria voluntarily became a party defendant. A stipulation was entered into between the city and Malone that he should be paid $2,125 by the city, as salary due him as fire marshal from May 16, 1943, to February 1, 1944, in consideration of his agreement to resign on February 1, 1944. That pursuant to the stipulation, a second judgment was entered requiring the city to pay Malone that amount, "in full payment and settlement of all claims of said Patrick Malone against the City of Peoria for salary as Fire Marshal of the Fire Department of the City of Peoria, or otherwise."

By its appearance in the quo warranto proceeding, while the judgment therein, was under the control of the circuit court, the City of Peoria became a party to that proceeding and assented to the judgment therein rendered. The City of Peoria was not obligated to pay the salary of the office of fire marshal to Malone if he was not legally appointed to that office, that is, if he was a *de facto* officer. (*Stott v. City of Chicago,* 205 Ill. 281.) The City of Peoria did not appeal, nor otherwise, contest the judgment that Malone was the duly appointed fire marshal. The city acknowledged that the judgment was valid and conclusive by the stipulation to pay Malone the amount of the salary attached to the office of fire marshal during a part of the time he acted as such officer. It does not appear from the record that the appearance of the City of Peoria in the quo warranto proceeding and its acquiescence in the judgment therein rendered was not bona fide. (*People v. Illinois Cent. R. Co.,* 298 Ill. 516.)

The firemen's pension fund is in part maintained by taxes levied on the taxable property in the City of Peoria and a percentage of revenue collected by the city. (Sec. 1 [par. 918], Firemen's Pension

Fund Act.) The Board of Trustees of the Firemen's Pension Fund of the City of Peoria consists of the city treasurer, clerk and controller and three active firemen of the city. The treasurer of the board is required to execute a bond to the city, and in case of a breach of the bond, suit may be brought by the city. (Sec. 9, ib.) The Board of Trustees of the Firemen's Pension Fund of the City of Peoria is a branch of the municipal government of the City of Peoria and the trustees are officers of that city. (*People v. Coffin,* 282 Ill. 599, see also *Lage v. City of Marshalltown,* 212 Iowa 53, 235 N. W. 761.) The judgment in the quo warranto proceeding is binding on the board and the members thereof. (*Ward v. Field Museum of Natural History,* 241 Ill. 496; *Brack v. Boyd,* 211 Ill. 290.) The petitioner was legally, it is held under the record now before this court, appointed fire marshal.

The facts as they appear from the record are that the petitioner retired as an active fireman in 1933, and thereafter became a beneficiary of the pension fund receiving a pension of $75 per month, until he was appointed first assistant fire marshal on May 7, 1935. When he resigned as first assistant fire marshal, his pension payments of $75 per month were received, and accepted by him until he became fire marshal. On May 14, 1941, he was reappointed to the fire department as fire marshal, and served as such until February 1, 1944, when he resigned and again retired from the fire department. He did not receive a pension during the time he was fire marshal. He was past 70 years of age when he was appointed fire marshal. After his last reappointment, he did not make application to the Board of Trustees of the Firemen's Pension Fund of the City of Peoria to come under the provisions of the Firemen's Pension Fund Act; he did not pass a medical examination to determine his general physical condition given by a physician selected by the board of trustees.

The contention that the petitioner. is entitled to an increased pension, turns on the question whether the·reappointment of the petitioner as an active fireman reinstated him to membership in the firemen's pension fund, thus entitling him to a pension of one half of the salary of fire marshal after retirement. Only active firemen are entitled to membership in the fund, and the fact that petitioner was a beneficiary of the fund, as a retired fireman, adds nothing to his rights under the Pension Fund Act. (*Sup v. Cervenka*, 331 Ill. 459.)

It is our opinion that while appointment to the fire department is a necessary requirement, or qualification, for a fireman to be eligible to membership in the pension fund, the Firemen's Pension Fund Act is a distinct, complete and separate Act governing the fund, and prescribing the requirements entitling a fireman to the benefits of the fund. Those requirements are independent of the regulations governing the appointment of firemen by the Board of Fire and Police Commissioners of the City of Peoria. (*Stiles v. Board of Trustees of Police Pension Fund*, 281 Ill. 636.)

When the petitioner retired as a fireman in April 1933, he severed his connection with the fire department. (*O'Neil v. Harding*, 314 Ill. 516.) He retained no right to the position of fireman and no basis remained upon which he could demand reappointment as a fireman as a matter of right or justice. On his appointment, after his resignation, he entered the fire department on the basis as a fireman who had not theretofore had any connection with the department. (*Board of Trustees of Firemen's Pension Fund v. State ex rel. Furgason*, 205 Ind. 557, 187 N. E. 330.)

Section one at the time of the reappointment of the petitioner on May 14, 1941, was in part as follows: "But no person hereafter appointed in the fire department or fire service shall be considered a fireman

within the provisions of this Act unless at the time of his appointment he is between the ages of 21 and 35 years, passes a medical examination to determine his general physical condition given by a physician selected by the board of trustees hereinafter provided for and also makes application to the board of trustees to come under the provisions of this Act.''

Section one of the Firemen's Pension Fund Act restricts membership in the fund to those who at the time of appointment are between the ages of 21 and 35 years of age, who make application to the board of trustees of the fund to come under the provisions of the Act, and who pass a medical examination to determine their general physical condition given by a physician selected by the board. (*Board of Trustees of Firemen's Pension Fund v. State ex rel. Furgason,* 205 Ind. 557, 187 N. E. 330.)

In the *Furgason* case, above cited, the relator, Furgason, brought an action in the circuit court of Morgan county, Indiana, against the Board of Trustees of the Firemen's Pension Fund of the City of Indianapolis, Indiana, to mandate the board to establish his status as a beneficiary of the fund. Furgason resigned as a member of the fire department on May 8, 1918, and became a member of the firemen's pension fund. On May 12, 1924, he was again appointed a member of the fire department. After his reappointment he made application to be reinstated in the firemen's pension fund. The trustees of the pension fund indicated that he had been accepted to membership in the fund, and he paid his dues to the fund for May, June, July and August 1924; and received receipts therefor. He submitted to a medical examination and the medical examiner recommended that he be not accepted because his blood pressure was too high.

It appears from the contentions made by Furgason that the circuit judge was of the opinion that since Furgason was reinstated as a member of the fire de-

partment, his status was as though he had always continued as such, and that therefore having qualified and been admitted as a member of the pension fund during his original employment, he was entitled to reinstatement therein, as though his employment had never been discontinued. The circuit court rendered judgment in favor of Furgason. The trustees of the pension fund appealed and the Supreme Court of Indiana held, that upon his resignation, Furgason completely severed his connection with the fire department, and he retained no right to the position or any of its rights, benefits, or emoluments, and no basis remained upon which reinstatement or re-employment as a matter of right or justice.

It is further held in the *Furgason* case that a statutory provision, ''That in no event shall a pension be paid to any employee of the fire department who at the time of his appointment was over thirty-five years of age, nor to any employee who has failed to pass the medical examination,'' restricts the admission to membership in the pension fund to those who at the time of appointment are not over thirty-five years of age. The court stated: ''The relator does not come within this age requirement, and the fact of his prior service adds nothing to his rights. If it were otherwise, one who had served one year on the fire department, having been appointed when he was thirty-five years of age, having passed a medical examination, and who had resigned, might be re-employed after thirty years under guise of reinstatement, and eligible to membership in the fund, notwithstanding the great injustice thereby worked upon those who had been continuously members of the department and members of the fund. Such a construction would be contrary to the very purpose and intention of the provisions of the statute.'' The judgment was reversed, with directions to enter judgment in favor of the trustees of the pension fund.

In 1943 the legislature amended section one of the Firemen's Pension Act to read in part as follows: "But no person hereafter appointed or reappointed in the fire department or fire service shall be considered a fireman within the provisions of this Act, unless at the time of his first appointment therein, he was between the ages of twenty-one (21) and thirty-five (35) years, and unless after his appointment or reappointment, as the case may be, he shall make written application to the board of trustees hereinafter provided for to come under the provisions of this Act, and shall be found upon a medical examination of a duly licensed physician selected by said board of trustees to be then physically and mentally fit to perform the duties of a fireman."

In the case of *Lubezny v. Ball,* 389 Ill. 263, it is stated as follows:

"In ascertaining the meaning and intent of the General Assembly in the construction of statutes, where no specific provision appears to aid such construction, recourse may be had to the language of subsequent acts of the same lawmaking body. (*Lawrence v. People ex rel. Foote,* 188 Ill. 407.) In *United States v. Freeman,* 3 Howard 556, 11 L. ed. 724, it was said: 'If it can be gathered from a subsequent statute *in pari materia,* what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute.' See, also, *Cannon v. Vaughn,* 12 Tex. 399; 23 Am. & Eng. Ency. of Law, p. 315; Endlich on Interpretation of Statutes, secs. 43, 44, 47; *Matter of Yick Wo,* 68 Cal. 294.''

The circuit court erred in striking the fourth separate defense of the respondents.

When a fireman has retired, received pension payments and thereafter re-enters the active service of the fire department, he is not a retired fireman

within the meaning of the Pension Act. His pension payments are properly suspended while he is in such active service and receiving the salary of an active fireman. (*Stiles v. Board of Trustees of Police Pension Fund*, 281 Ill. 636; *McBride v. Allegheny County Retirement Board*, 330 Pa. 402; *People ex rel. Luthardt v. Retirement Board of Policemen's Annuity & Benefit Fund of Chicago*, 273 Ill. App. 387.)

The trial court did not err in overruling the motion of the petitioner to strike the first separate defense of the respondents.

In 1943 the legislature enacted sec. 7b to the Firemen's Pension Fund Act [Ill. Rev. Stat. 1945, ch. 24, par. 924b; Jones Ill. Stats. Ann. 100.278(2)]. This section is as follows: "If any fireman shall have retired or been discharged from active service and shall have to his credit twenty years of service computed as aforesaid, and shall have received any pension payments under the terms of this act after he shall become fifty years of age, and shall thereafter re-enter the active service, his pension payments shall cease during the period in which he shall be in such active service; and if he shall thereafter again retire or be discharged from active service, his monthly payments shall be resumed and be payable for the remainder of his life, but only in the same monthly amounts which he had received as a pensioner as a result of his first retirement or discharge."

The two amendments enacted in 1943 to the Pension Fund Act should be construed together. The last clause of section 7b is to the effect, that although a pensioner, when he has retired or been discharged from active service as a fireman, (and has qualified as a member of the pension fund as required by amended section 1,) his pension shall be resumed in the same monthly amounts which he received as a pensioner as a result of his first retirement or discharge.

■ ■ That part of the judgment which ordered the writ of mandamus to issues directing the **respondents** to pay the petitioner a pension of $125 per month for the remainder of his lifetime is reversed; that part of the decree denying the writ directing the respondents to pay the petitioner a pension of $75 per month during the time he was fire marshal is affirmed. · The cause is remanded to the circuit court of Peoria county with directions to enter judgment in favor of the respondents.

*Affirmed in part and reversed in part, and remanded with directions.*