People of State of Illinois ex rel. Glenn Palmatier, Peti-
tioner-Appellant, v. Francis Tighe, Respondent-
Appellee.

Gen. No. 10,882.

Second District.

July 9, 1956.

Rehearing denied July 30, 1956.

Released for publication July 30, 1956.

Joseph Keig, Sr., of Chicago, for appellant.

Reid, Ochsenschlager & Murphy, and Harold L. Beamish, all of Aurora, for appellee; Harold L. Beamish, L. M. Ochsenschlager, and Robert B. Hupp, all of Aurora, of counsel.

PRESIDING JUSTICE DOVE delivered the opinion of the court.

Upon a motion by Glenn Palmatier and notice to respondent, Francis Tighe, a rule was entered by the Circuit Court of Kane County directing respondent to show cause why petitioner should not be granted leave to file his complaint in the nature of quo warranto. Subsequently leave was granted petitioner to amend his petition and respondent duly served with a copy of the proposed petition as amended. The respondent appeared, filed a verified answer setting forth the reasons why leave should not be granted. A hearing was had resulting in an order denying petitioner leave to file his complaint and dismissing the proceeding. To reverse that order, petitioner appeals.

The petition, as amended, alleged that petitioner was a resident of the City of Aurora, Kane County, Illinois, and was, on March 11, 1955, duly appointed Chief of Police of that city by Paul Egan, Mayor of said city; that on March 14, 1955, he filed his bond and oath of office and made a demand upon respondent, Francis Tighe, then acting Chief of Police of said city, for the keys, files and records of the office to which he was appointed, but his demand was refused. The amended petition further alleged that the City of Aurora operates under the commission form of municipal government and on January 12, 1955, the said Paul Egan, Mayor of said City and also the Commissioner of Public Affairs of Aurora, discharged the respondent from the office of Chief of Police of Aurora, but that notwithstanding his discharge, the said respondent continues to hold said office and continues to exercise the duties and privileges thereof.

It was then alleged that petitioner has requested the Attorney General of the State of Illinois and the State's Attorney of Kane County to file a proceeding in quo warranto against the respondent in order to test his right to hold said office of Chief of Police, but his requests have been refused. The prayer of the amended petition was that petitioner be given leave to file a

3

complaint in quo warranto against the respondent requiring him to show by what authority he exercises the office of Chief of Police of the City of Aurora.

The reasons set forth in the answer of the respondent why leave to file a complaint in quo warranto should be denied are: (1) the amended petition fails to allege facts showing that petitioner has the special and personal interest required by law to entitle him to maintain a quo warranto proceeding; (2) that said amended petition fails to allege facts showing the legal appointment of the petitioner as Chief of Police of the City of Aurora in accordance with the statutes of the State of Illinois and the ordinances of the City of Aurora; (3) that said amended petition fails to allege that petitioner executed and filed his bond in the manner and form required by law; (4) that said amended petition fails to allege that the purported appointment of petitioner as Chief of Police of the City of Aurora was confirmed by the City Council of the City of Aurora as required by its ordinances; (5) that it would not be to the best interests of the City of Aurora and its citizens or of the people of Illinois if petitioner were allowed to file his complaint in quo warranto for the following reasons: (a) that petitioner has no training or experience which would qualify him to perform the duties of Chief of Police; (b) that respondent has been a police officer for more than twenty-four years and is singularly fitted by experience and training to perform the duties of Chief of Police; (c) that petitioner is the subject matter of a case pending in the Circuit Court of Kane County, filed by petitioner's wife, asking triple damages against four retail liquor dealers as a result of gambling losses sustained by petitioner; (d) that on March 16, 1955, the City Council of the City of Aurora adopted a resolution disapproving the appointment of petitioner as Chief of Police, specifically disapproving the purported bond filed by him, a copy of which resolution was attached to and made a part of

4

the answer; and (e), that the appointment of petitioner was not a bona fide appointment. The answer further charged that petitioner was a defaulter to the City of Aurora and as such was ineligible to hold any municipal office in said city.

The record discloses that the City of Aurora has a population in excess of 50,000 and that it operates under the commission form of municipal government (Ill. Rev. Stat., chap. 24, sec. 19—1 et seq.). The city is therefore governed by a council composed of the mayor and four commissioners. The executive and administrative duties and powers in the city are distributed among five departments; viz.: the department of public affairs, the department of accounts and finances, the department of public health and safety, the department of streets and public improvements, and the department of public property. The Mayor is superintendent of public affairs, and the police department is assigned to and made a part of this department (Ill. Rev. Stat. chap. 24, sec. 19—43).

The statute also provides that the council has the right and power to appoint and discharge the heads of all principal departments subordinate to the foregoing five departments, but the commissioner of each department may be vested by ordinance with the sole right and power to appoint and discharge the heads of all principal departments subordinate to the department of which he is the commissioner (Ill. Rev. Stat. chap. 24, sec. 19—44).

In 1952 the city council of the City of Aurora passed an ordinance, which, among other things, assigned to the department of public affairs all powers, authority and duties by ordinance and by statute vested in and embraced by the executive department of the municipal government of the city, known as the department of police, and all officers, subordinates and employees thereof, and charged the commissioner of public affairs with complete superintendence of said department of

5

police and the equipment, records and personnel thereof and directed that the Chief of Police and each officer and employee of the department should work under the control and supervision of such commissioner.

On May 21, 1953, the city council adopted another ordinance which provided: "The commissioner of each department provided for in section 19–41 of chapter 24 of the Illinois Revised Statutes entitled 'Cities and villages' is hereby vested with the sole right and power to appoint and discharge the heads of all principal departments subordinate to the department of which he is the commissioner. Such appointments, when made, shall be subject to confirmation by the council."

It is insisted by counsel for appellant that this is a valid ordinance in so far as it vested the commissioner of public affairs, the Mayor, with the sole right and power to discharge appellee as Chief of Police and appoint appellant as his successor, but, conclude counsel, the provision that "such appointments, when made, shall be subject to confirmation by the council" is plainly void because it is beyond the provisions of the statute. We do not agree. Section 19—44 of chapter 24 lodges with the city council the right and power to appoint and discharge the Chief of Police in Aurora.

This same section also empowers the city council to vest, by ordinance, each commissioner with the sole right to appoint and discharge the heads of all principal departments subordinate to the department of which he is the commissioner. As applicable to this case, this ordinance took away from the city council the power to appoint and discharge a Chief of Police and lodged in the Mayor that right and when he did so his choice was subject to confirmation by the council. That is what the ordinance says. Certainly the ordinance must be considered in its entirety. A casual reading of it indicates that the city council did not grant to each commissioner the sole and conclusive

6

right of appointment or discharge without any restriction, condition or further requirement. The clear meaning of the ordinance is that the right to appoint or discharge should originate with the appropriate commissioner and his appointment or discharge, when made, would be submitted to the council and subject to confirmation by that body. If this is not the correct construction of the ordinance, the entire ordinance should fail and the right to appoint and discharge the Chief of Police and other department heads is taken care of by section 19—44 of chapter 24 which lodges this power in the city council.

The record discloses that the city council never discharged or confirmed the discharge of appellee from the office of Chief of Police nor ever appointed or confirmed the appointment of appellant to that office. The only thing the city council did in connection with this matter was done on March 16, 1955, when it adopted a resolution which recited that Mayor Egan had filed with the city clerk the nomination of appellant as Chief of Police of Aurora and that appellant had filed in the clerk's office a document purporting to be a bond in the sum of $3000. This resolution then continues:

"WHEREAS there is no vacancy in the office of the Chief of Police of the City of Aurora, Illinois, and

"WHEREAS there is no showing of any previous police experience or any training whatsoever which would qualify the said Glenn A. Palmatier to perform the duties of the Chief of Police of the City of Aurora in a manner which the best interests of the City of Aurora would demand, and

"WHEREAS it appears that it is in the best interests of the City of Aurora that the nomination or appointment be not approved by the City Council:

"Therefore, Be it Resolved that this City Council of Aurora go on record as not confirming or approving either the appointment or nomination of the said Glenn

A. Palmatier by the said Mayor, and of not approving the document alleged to be a bond filed by the said Glenn A. Palmatier.

"Be It Further Resolved that a copy of this Resolution be forwarded to the said Glenn A. Palmatier for his information.

"Edward J. Ryan  
"Robert J. Weiland  
"John P. Thill  
"George Orland  } Commissioners."

■ Under the ordinance of the City of Aurora, as we construe it, Mayor Egan was given the power to appoint a Chief of Police. He did so. Under the ordinance, his appointment, in order to become effective, must have been confirmed by the council. This was not done, and the record affirmatively shows that the council acted upon the appointment and refused to confirm it. Assuming the ordinance invalid because it provided for confirmation of an appointment by the council, which proviso was not authorized by the statute, then the appointive power continued to be lodged in the council, and the record discloses no appointment of appellant by the council was ever made. Because the record affirmatively shows that appellant was not legally appointed Chief of Police, his interest in instituting a quo warranto proceeding is that of the public at large and he is not authorized to prosecute an information in the nature of quo warranto. A general interest which every citizen has in the enforcement of law is not an interest which will justify the presentation of an information by a citizen. A private and personal right is necessary. The interest must be special and not common to the public. (People ex rel. Malone v. Mueller, 328 Ill. App. 593; People v. Fullenwider, 329 Ill. 65.)

If we are wrong, however, in the construction we have placed on the ordinance adopted by the city on May 21, 1953, there is another reason why the order

8

of the trial court was correct. Section 19—39 of chap. 24 of our statutes provides that certain enumerated officers and such other officers and employees as the council may designate by ordinance shall, before entering upon their respective duties, execute bonds with good and sufficient security to be approved by the council in such penal sums as may be directed by ordinance. On April 27, 1942, ordinance No. 2560 was adopted by the City of Aurora which required the Chief of Police to execute a bond to the city in the sum of $2000.

■ What the record shows with reference to a bond is that appellant alleged in his amended petition that on March 14, 1955, he filed his bond and oath of office. It is not alleged with whom or where he filed it, nor is it alleged that it was ever approved and accepted. The answer of appellee averred that the amended petition was defective because it failed to allege that appellant executed and filed his bond in manner and form as required by law. Upon the hearing, evidence was produced, and it appears from the resolution adopted by the council on March 15, 1955, that the council did not approve "the document alleged to be a bond filed by the said Glenn A. Palmatier." Before appellant can successfully assert a claim to the office of Chief of Police, the provisions of the applicable statute and ordinance with reference to a bond must have been complied with or some facts disclosed which would excuse compliance therewith. Appellant's alleged appointment could not have become effective until his bond was filed and approved as required by law. (People v. Wisch, 345 Ill. App. 609.)

■ ■ The writ of quo warranto is not a writ of right but lies in the sound discretion of the court, which may consider all the circumstances and conditions, the motives of the petitioner in having the proceeding instituted, and whether the public interest will be served or damaged by the writ. (People v. Jones,

308 Ill. 246, 249.) If the facts shown by respondent in his answer to the rule are disputed or if new and doubtful questions of law are presented, leave should be granted to file the information. If, however, the facts are not disputed and if the questions of law may receive as full and careful consideration upon the application for leave to file as upon a final hearing, leave to file should not be granted. (People v. France, 314 Ill. 51, 54.)

In view of the conclusion indicated there is no necessity to refer to the other matters set forth in appellee's answer which, in some particulars, the evidence produced upon the hearing tended to substantiate.

The trial court was justified in holding that appellant did not show a clear right to the office of Chief of Police and properly denied leave to file the information. The order appealed from is affirmed.

Judgment affirmed.

CROW and EOVALDI, JJ., concur.